Points decided.

---

[No. 4,089.]

## GEORGE W. BABCOCK *v.* J. V. B. GOODRICH, County Clerk, and Ex-Officio Auditor of the County of Alameda.

AVERMENT IN COMPLAINT.—An averment in a complaint that a contract was signed by C, chairman of the Board of Supervisors, under authority from the Board, is not demurrable on the ground of uncertainty because not averring directly that C was Chairman of the Board, and had authority to make the contract.

IDEM.—If a contract for the erection of a county jail is attached to and made a part of a complaint, and the Court-house is to be erected on a block of land at O, the county seat, it is a sufficient averment that the block of land is at the county seat.

MANDAMUS FOR AUDITOR'S WARRANT.—The writ of mandate is the proper remedy against an Auditor who refuses to issue a county warrant when directed to do so by the Board of Supervisors. An action on the Auditor's official bond is not a "plain, speedy, and adequate remedy."

REMEDY TO SUPERSEDE MANDAMUS.—To supersede the writ of mandate, the party must have not only a specific adequate legal remedy, but one competent to afford relief upon the very subject-matter of his application.

DRAWING WARRANT BY AUDITOR.—An Auditor cannot refuse to draw a county warrant because there is no money in the treasury.

PRESENTATION OF ACCOUNT TO SUPERVISORS.—If a Board of Supervisors enter into a contract for the erection of a county jail, the work and labor to be paid for in instalments, on the certificate of the architect that a certain sum has been expended, an account giving the sum total of an instalment, without "all the items of the claim," certified to by the architect, is a sufficient compliance with Sec. 4072, of the Political Code, to authorize the Board of Supervisors to allow the same.

WRIT OF MANDATE.—The writ of mandate is not the proceeding in which to try the title to land.

QUESTION OF TITLE TO LAND IN MANDAMUS.—The question of a county's title to a block of land on which it is erecting a county jail, cannot be tried in an application for a writ of mandate to compel the Auditor to issue a warrant to a contractor for erecting a county jail on the land.

DRAWING COUNTY WARRANTS.—An order of a Board of Supervisors directing the Auditor to issue a warrant, need not specify on what fund it is to be drawn.

CONTRACT FOR COUNTY BUILDINGS.—A contract for the erection of county buildings is not void because it does not provide that eight hours shall be a day's work under it.

PUBLIC BUILDINGS.—Sections 3,233 and 3,234 of the Political Code, which relate to labor and materials on public buildings, seem to refer exclusively to the buildings of the State.

LAWS OF SESSION OF 1871-2.—The laws passed at the session of 1871-2 must prevail over the Codes which were adopted at the same session.

Points decided.

POWER TO ERECT COUNTY JAIL.—A Board of Supervisors has authority to erect a county jail, without a law authorizing the levy of a special tax therefor.

HOW COUNTY JAIL MAY BE PAID FOR.—The erection of a county jail is among the expenses of the current year, and may be paid for out of the money raised by the general tax which the Board of Supervisors are authorized to levy.

CONTRACT PAYABLE IN COUNTY WARRANTS.—A contract made by a county with another party, in which the county agrees to pay for services rendered, in county warrants, is in effect a contract payable in money, and is not void.

AVERMENT IN COMPLAINT.—An averment in a complaint, that a county seat has been removed, is sufficient, without setting forth all the proceedings resulting in the removal, such as the petition for an election, an election, etc.

IDEM.—If a complaint avers that a county seat has been removed from one place to another, and there is an old Act fixing the county seat at the former place, the Court, in support of the averment, will take judicial notice of the fact that the county seat may have been removed by an election to the latter place, under the law allowing such removals.

CONTRACT OF A COUNTY.—A contract entered into by a Board of Supervisors, for and on behalf of the county, and signed by the Chairman of the Board, is the contract of the county.

COMPLAINT IN MANDAMUS.—Averments in a complaint, that the orders allowing an account, and directing the Auditor to draw his warrant for the same, "were duly given and made," are sufficient to show the jurisdiction of a Board of Supervisors to direct a county warrant to be issued, and that there was money in the treasury, and that a tax had been levied, and that no debt had been created when the account was allowed, which, added to the salaries of the officers, equaled the aggregate revenue.

CONTRACTING COUNTY DEBTS.—Section 4,070 of the Political Code, which declares in effect, that the Board of Supervisors must not contract debts and liabilities which, added to the salaries of officers, etc., will exceed the revenue of the county for the year, does not mean, by "revenue," the actual amount of money received into the treasury, but the estimate of the Board of Supervisors of what the revenue will be.

ALLOWANCE OF ACCOUNT BY SUPERVISORS.—It is the estimate of the Board of Supervisors, at the time an account is presented for allowance, of what the revenue of the year will be, which must control their action in allowing or rejecting it.

DUTY OF COUNTY AUDITOR.—Except in cases where the Board of Supervisors have exceeded their powers, the Auditor cannot assume to set up his judgment in opposition to theirs, in respect to the issuance of a warrant on an account against the county.

IDEM.—The Auditor cannot refuse to issue a warrant, when ordered to do so by a Board of Supervisors, because the person in whose favor it is to be drawn, and whose account has been allowed, has committed a fraud on the county in relation to procuring the contract on which the warrant is to be issued.

APPLICATION to the Supreme Court for a writ of mandate to compel the Auditor to issue a warrant on an account which had been allowed by the Board of Supervisors. In order to enable the profession to understand more fully all the points referred to in the opinion, the complaint and answer are inserted below in full:

"The petition of George W. Babcock respectfully shows and your petitioner on oath alleges and deposes:

"I. That on the twenty-fifth day of June, 1873, the county seat of the said county of Alameda was removed from the town of San Leandro, where the same had previously been located, to the city of Oakland, which has ever since been and now is the county seat and seat of justice of said county.

"II. That the said county of Alameda has not now and never had any jail or other place for the confinement of prisoners at the said city of Oakland, and that since the removal of the county seat as aforesaid, the said county has continued to use as a jail the building previously occupied for that purpose at the said town of San Leandro.

"III. That said town is about seven miles from the said city of Oakland, and that said building so used as a jail is not the property of said county, and has only been used temporarily until a jail could be built at the said city of Oakland.

"IV. That on the second day of August, 1873, and from that time continuously until the eighteenth day of the same month, the Board of Supervisors of said county advertised in various newspapers, printed and published in said county, for plans and specifications in detail for a jail to be erected at the said city of Oakland, and stated in said advertisement the sum of fifty thousand dollars as the amount authorized by said Board to be expended in the erection of said jail, and the sum of three hundred dollars as the premium to be awarded to the architect whose plans and specifications for the same should be adopted; and further stated, that said plans and specifications would be received by said Board up to twelve o'clock, noon, of said last men-

tioned day at the office of the Clerk of said Board in the Court House at the said city of Oakland.

" V.    That on and prior to the said eighteenth day of August, 1873, plans and specifications were prepared and delivered to said Board in pursuance of said advertisement by several competent architects, and among others, by the firm of S. C. Bugbee & Son, of the city and county of San Francisco, and that on the nineteenth day of August, 1873, said Board examined said plans and specifications, and thereupon adopted the plans and specifications prepared and delivered as aforesaid, by the said S. C. Bugbee & Son.

" VI.    That on the fourth day of September, 1873, the said Board of Supervisors, acting for and on behalf of the said county of Alameda, entered into a written contract with your petitioner for the erection of said jail, in accordance with the plans and specifications adopted as aforesaid, a copy of which contract marked 'Exhibit A,' is hereto annexed and made part of this petition.

" VII.    That said contract was signed by your petitioner, and by Isham Case, Chairman of the said Board of Supervisors, under authority from said Board, and was executed in pursuance of orders and determinations of said Board in that behalf duly given and made.

" VIII.    That by the terms of said contract, it is provided that at any time within the time to which your petitioner is therein limited in the completion of said jail, and at all times within said period upon the certificate in writing, of the said S. C. Bugbee & Son, architects, to the said Board of Supervisors, that work, labor, and material have been expended upon said jail in strict conformity with the plans and specifications thereof, and satisfactorily to the said architects, to any certain amount to be set forth in said certificate, the said Board will cause to be paid to your petitioner seventy-five per centum of the said amount set forth in said certificate.

" IX.    That immediately after the execution of said contract, your petitioner commenced the erection of said jail in pursuance thereof, and that prior to the third day of

November, 1873, work, labor and materials were expended by your petitioner upon said jail, in strict conformity with the plans and specifications thereof, and satisfactorily to the said S. C. Bugbee & Son, architects, as aforesaid, to the amount of three thousand eight hundred dollars.

"X. That on said last-mentioned day the said S. C. Bugbee & Son, as such architects, certified in writing to the said Board of Supervisors that said work, labor, and materials had been expended by your petitioner, as aforesaid, a copy of which certificate, marked 'Exhibit B,' is hereto annexed and made a part of this petition.

"XI. That on the twelfth day of November, 1873, your petitioner presented to the said Board of Supervisors an account against the said county of Alameda for the sum of two thousand eight hundred and fifty dollars, as the amount due for said work, labor, and materials, being seventy-five per cent. of the amount set forth in said certificate; which said account was duly verified by your petitioner, and a copy thereof and of such verification are hereto annexed, marked 'Exhibit C,' and made a part of this petition.

"XII. That said certificate was attached to said account and presented therewith to the said Board of Supervisors, and that said certificate and account were thereupon filed by the clerk of said Board.

"XIII. That afterward, on the same day, the said Board of Supervisors examined said account, and made an order allowing the same, and on the twenty-fourth day of November, 1873, made a further order, directing said account to be paid, and directing the Auditor to draw his warrant upon the County Treasurer for the amount thereof, and that said orders were duly given and made.

"XIV. That the said J. V. B. Goodrich was, at the times hereinbefore mentioned, and ever since has been, and still is, County Clerk of the said county of Alameda, and *ex officio* Auditor of said county, and Clerk of the said Board of Supervisors.

"XV. That on the twenty-fifth day of November, 1873, and at divers other times after said account had been allowed and ordered to be paid, as aforesaid, your peti-

tioner requested the said Goodrich, as Auditor of said county, to draw his warrant upon the County Treasurer in favor of your petitioner in payment of said account, and then and there demanded said warrant of the said Goodrich, as such Auditor, and that the said Goodrich refused to comply with said requests and demands, and refused to draw said warrant or any warrant in payment of said account, and so to do has ever since refused and still refuses; that said requests and demands were made at the office of the said Goodrich in said county, and that in reply thereto the said Goodrich stated to your petitioner, among other things, that he would not draw said warrant unless the Courts should compel him to do so.

"XVI.  That the refusals by the said Goodrich as aforesaid have deprived your petitioner of the means of obtaining payment of said account, and that he has not any plain, speedy, or adequate remedy in the ordinary course of law.

"Wherefore, your petitioner prays that a writ of mandate may be issued out of this Honorable Court, directed to the said J. V. B. Goodrich, as Auditor of the said county of Alameda, and commanding him as such Auditor to draw his warrant upon the County Treasurer of said county in favor of your petitioner, for the amount of said account and in payment thereof, and to do such other acts and things as may be necessary or proper in the premises.

"Your petitioner further states, that he makes his application for the writ of mandate herein to this Honorable Court in the first instance, because the matters involved are of public and general interest to the people of said county, and their speedy determination is necessary to prevent serious embarrassment in regard to said contracts and the erection of said jail, and because of the delays incident to such proceedings in the District Courts."

"Exhibit A."

"This contract and agreement, made and entered into this fourth day of September, A. D. 1873, by and between the Board of Supervisors of Alameda county, acting for and on behalf of said county of Alameda, party of the first

part, and George W. Babcock, of the second part, witnesseth: That the said party of the second part, for himself, his executors, administrators, and assigns, does convenant, promise, and agree, to and with the said party of the first part, its successors and representatives, that he, the said George W. Babcock, party of the second part herein, his executors, administrators, and assigns, shall and will, for the consideration hereinafter mentioned and expressed, to wit: the sum of forty-two thousand dollars ($42,000) in county warrants, on or before the fourth day of May, A. D. 1874, well and sufficiently construct, erect, and finish a jail building upon that certain piece, parcel, or tract of land situate, lying, and being in the late town of Brooklyn (now in the City of Oakland,) county of Alameda, State of California, known, numbered, and laid down upon the map and plan of the said town of Brooklyn and map of the town of San Antonio as and by the number following, that is to say, block number twenty-two (22,) as the same now appears of record and on file in said county. The said jail building to be erected upon such portion of said block 22 as shall be designated by said first party or any committee thereof, thereto authorized by said first party.

"The said building shall be erected, constructed, and completed at all points, and in each and all respects, in accordance with the plans and specifications thereof signed by the parties hereto and filed with this contract in the office of the County Clerk of the county of Alameda, said plans being marked respectively "A," "C," "B," "D," "E," and said specifications being marked "F," and made part thereof. Said work, and construction, and completion, shall be completed within the time aforesaid, to wit: within eight months from the signing of this contract, in good and substantial manner, to the satisfaction of and under the direction and supervision of S. C. Bugbee & Son, jointly with such committee, as said party of the first part may now have or may hereafter appoint for that purpose.

" The said party of the second part shall provide and use such good, proper, and suitable materials of all kinds and descriptions, in accordance with said plans and specifica-

tions, as shall be proper, necessary, and sufficient for completing said building, both foundation and superstructure, strictly in accordance with the plans and specifications aforesaid, and that when so completed, the said party of the second part shall and will deliver the same to the said party of the first part, or to its committee, for that purpose appointed.

"In consideration of the foregoing covenants and agreements, on the part of the party of the second part, and the strict and literal fulfillment of each and every such covenant and agreement, and as compensation agreed upon for said work and construction aforementioned in this instrument, the said party of the first part, on behalf of, and for the county of Alameda (and not otherwise) agrees and covenants that said party of the first part will well and truly pay and cause to be paid to said second party, in full, and as and for the full contract price and compensation for said construction and completion, the full sum of forty-two thousand dollars ($42,-000) in warrants upon the fund called and known as the "General Fund" of Alameda County, each and every of said warrants and all amounts therein paid to be paid and taken at par, and payable in due course as other warrants upon said fund. Said amount payable as follows: That is to say, at any time within the time to which said second party is herein limited in the completion of said building, and at all times within said period, upon the certificate of S. C. Bugbee & Son, architects, in writing to said first party, that work, labor and material have been expended upon the said building, in strict conformity with the plans and specifications thereof, and satisfactorily to said architect, to any certain amount to be set forth in such certificate, the said party of the first part will so as aforesaid cause to be paid to said second party seventy-five per centum (75 per cent.) of the said amount set forth in said certificate; and upon the completion of said building within or at the time herein fixed, and upon certificate of S. C. Bugbee & Son, architects, that the same has been so completed and finished strictly in accordance with the plans and specifications aforesaid, and upon the further certificate of the building committee of the

Board of Supervisors of Alameda County to the same effect, said first party will well and truly pay and cause to be paid any and all balance or balances then due upon such contract price.

"The specifications and drawings above and herein mentioned are to mutually co-operate with and explain each, and every difference of opinion respecting the same shall be determined by the supervising architect, and said party of the first part and the county of Alameda shall not, in any way or manner, be answerable, or suffer loss, damage, or liability for any loss or damage that may happen said building, or any part thereof, during its construction and before acceptance.

"It being understood and agreed, by and between all parties hereto, that by endorsement hereon any omission may be directed by said first party and rebate therefor allowed upon computation of S. C. Bugbee & Son, architects, and any alterations desired by said first party shall be made and allowed, and payment therefor computed in like manner.

"In witness whereof, the parties hereto, the Board of Supervisors of Alameda County, by Isham Case, its Chairman and President, thereunto duly authorized, and the said party of the second part, have hereunto set their hands and seals the day and year first above written.

               "GEO. W. BABCOCK.    [Seal.]
               "ISHAM CASE,           [Seal.]
     "*Chairman Board of Supervisors Alameda County.*"

"Exhibit B."

"To the Honorable Board of Supervisors of Alameda County:

"We hereby certify that George W. Babcock has expended work, labor, and materials to the amount of thirty-eight hundred ($3,800) dollars upon the jail building now being erected by him for the said county of Alameda, under his contract of the fourth of September, 1873, and that said work, labor, and materials have been expended in strict conformity with the plans and specifications of said build-

ing, and satisfactorily to us, the architects named in said contract.

"S. C. BUGBEE & SON, Architects.
"San Francisco, November 3d, 1873."

"Exhibit C."

"Alameda County,

To George W. Babcock, Dr.
"To amount due November 3d, 1873, for work, labor, and materials expended upon jail building, as per contract of September 4th, 1873.. $2,850 00

"The above amount is seventy-five per cent. of the amount named in the certificate of S. C. Bugbee & Son, architects, hereto annexed.

"State of California,  } ss.
      County of Alameda. }

"George W. Babcock, being first duly sworn, deposes and says that he is the claimant named in the foregoing account, that the said account is correct, and that the amount claimed, as therein set forth, is justly due.

"GEORGE W. BABCOCK.

"Subscribed and sworn to before me this eleventh day of November, 1873.
"[Seal.]        A. B. WEBSTER,
                "Notary Public."

### Demurrer.

"Comes now J. V. B. Goodrich, the respondent, by Charles A. Tuttle, his attorney, and demurs to the complaint, for the following reasons:

"The complaint does not state facts sufficient to constitute a cause of action.

"The complaint is uncertain in this: that it does not appear by direct averment in said complaint that Isham Case had authority to make the contract marked 'Exhibit A,' and it does not appear by direct averment that Isham Case is Chairman of the Board of Supervisors, or a Supervisor.

"It is uncertain, from the averments of said complaint, whether the Board of Supervisors ordered this defendant to

draw a warrant payable out of the 'general fund,' or any particular county fund, or designated any fund.

"It is uncertain, from the averments of the complaint, whether the land described in Exhibit A as block twenty-two, as laid down on the map and plan of the town of Brooklyn, and map of the town of San Antonio, is in the city of Oakland.

"C. A. TUTTLE,<br>
"Attorney for Respondent."

## Answer.

"Comes-now the respondent, J. V. B. Goodrich, by C. A. Tuttle, his attorney, and for answer to the complaint denies, according to his information and belief, that the building used as a jail by the county of Alameda at San Leandro, is not the property of said county.

"Defendant, for a further separate defense, avers that the Board of Supervisors did not award the contract for building the jail, to the lowest bidder, but that E. L. Mayberry was the lowest bidder, and the said Board passed over his bid, and awarded the contract to the relator, Babcock, who was the highest bidder; and said Mayberry, as defendant is informed and believes, was ready and able to have taken and performed the contract.

"Respondent, for a further separate defense, avers that Hall & Cox were bidders for the contract to erect the jail mentioned in the complaint, and presented to the Board of Supervisors, a bid to construct the same for forty-one thousand and five hundred dollars, but that, as respondent is informed and believes, the relator, for the purpose of obtaining said contract, entered into an agreement with Hall & Cox, by which he agreed to pay said Hall and Cox eight hundred dollars to withdraw their bid, and by reason of said agreement Hall and Cox withdrew their bid, and by means thereof, the relator obtained the contract, and the county of Alameda was injured.

"For further separate defense, relator avers that Isham Case had no authority from the Board of Supervisors, to make a contract for the erection of a jail, except it allowed

the county to pay for the same in county warrants, without mentioning any fund on which the warrants should be drawn, and that the contract set forth in the complaint is therefore void.

" For a further separate defense, relator avers that the contract set out in the complaint, is not the contract of the county of Alameda, but of the Supervisors of said county, and does not, therefore, bind the county in its corporate capacity.

" For a further separate defense, relator avers that the Board of Supervisors had no authority ·to enter into the contract mentioned in the complaint, or to bind Alameda county thereby, inasmuch as they had no authority to impose a tax to collect revenue to pay for said jail.

" For a further separate defense, respondent avers-that the relator has a plain, speedy and adequate remedy, by a a suit at law against respondent, as Auditor, to recover damages which plaintiff may sustain, or has sustained.

" For a further separate defense, respondent avers that before the contract mentioned in complaint was entered into, the county of Alameda had already incurred liabilities for its current expenses, and for salaries of its officers which equaled all its revenue, to be derived for the remainder of the year from the taxes imposed for county purposes, and that no provision has been made and no tax levied for the special and extraordinary expense to be incurred by the contract set out in the complaint, and when the relator's account was allowed by said Board, there was no money in the county treasury to pay the same.

" For a further and separate defense, respondent avers that the Board of Supervisors had no authority to contract to pay for a jail in county warrants, and therefore the contract is void.

" For a further separate defense, respondent avers that the Board of Supervisors had no authority in law to incur the extraordinary expense. mentioned in the complaint, or to levy a tax therefor.

" Defendant asks to be dismissed with his costs.

" C. A. TUTTLE,
" Attorney for Respondent."

## Amendment to Answer.

"Comes now the Respondent, by leave of the Court first had, and for an amendment to his answer in this cause (to be inserted at the end of the first paragraph) denies that the county of Alameda is temporarily using its jail at San Leandro, but avers that said county has a good jail at San Leandro, sufficient for all purposes, which it is now using, and has been using for more than four years last past.

"For further separate defense this defendant avers that the Board of Supervisors of Alameda County, by orders which it made more than two years ago, divided the revenue of said county into funds named as follows: General Fund, Road and Bridge Fund, School Fund, County Infirmary Fund, Interest on Oakland Bar Fund, Bounty Fund, Interest on Niles Bridge Bonds' Fund, Interest on Twelfth Street Bridge Bonds' Fund.

"And that for more than two years last past the County Treasurer of said county has kept its revenue in said funds by name, and the Auditor of said county has kept the accounts of the county with the said several funds by name, and that for the now current fiscal year the Board of Supervisors of said county levied the following tax for each of said funds, to wit:

"General Fund, 30c. on each $100 00.

"Road and Bridge Fund, 26c. on each $100 00.

"School Fund, 14c. on each on $100 00.

"County Infirmary Fund, .06c. on each $100 00.

"Interest on Oakland Bar Fund, .1¼c. on each $100 00.

"Bounty Fund, .01½c. on each $100 00.

"Interest on Niles Bridge Bonds' Fund, .00½c. on each $100 00.

"Interest on Twelfth Street Bridge Bonds, .00¾c. on each $100 00.

—and levied no other county tax, and that at the time the contract set out in the petition was entered into, and that at the time the Board of Supervisors allowed the account set out in the petition, and directed it paid, there was no money in the General Fund of said county, and warrants

for the current expenses of the county and for salaries of officers had been ordered drawn on it by the Board of Supervisors, and had been drawn on it by the Auditor for several thousand dollars, and several of the other funds had been overdrawn, and that the entire revenue of said county, for the now current fiscal year, being the year when said account was allowed, will not pay the debts and liabilities of said county which have been contracted for, its current expenses, during said year, and the salaries of its officers for the same fiscal year, and that no provision has been made for the payment of any warrant which may be drawn under said contract.                    "CHAS. A. TUTTLE,
"Attorney for Respondent."

*S. M. Wilson* and *W. W. Cope,* for the Plaintiff.

The portions of the answer referring to the building used as a jail at San Leandro, are immaterial. The statements of the petition on the subject are believed to be true, but they were only made for the purpose of showing the reasons acted upon by the Board of Supervisors. It is sufficient that there was no jail at the county seat, and that the Board had full power to provide for the erection of one. (Petition, paragraph 1, 2, 3; 2 Political Code, sec. 4,046, sub. 9.) Indeed, the question of power is the only one to be considered by the Court.

The Board was not required to award the contract to the lowest bidder. The contract was made under a general power conferred upon the Board, without any restriction as to the mode of exercising it.

The objection goes to the discretion of the Board, and not to its power; and it is clear that the action of the Board cannot be questioned in respect to a matter resting in its discretion.

It is alleged in the answer that Hall & Cox put in a bid at forty-one thousand five hundred dollars, and that this bid was withdrawn under an agreement with the relator by which he was to pay them eight hundred dollars. The point of this defense seems to be that the agreement was a fraud upon the county and against public policy, and that

its effect was to invalidate the contract subsequently made for the erection of the jail. As the relator is only to receive forty-two thousand dollars, the county has not been seriously injured; and the defense is not interposed in such a form as to entitle it to much consideration.

"It does not appear that bids were invited by the Board, nor is there any statement as to the terms of the bid put in by Hall & Cox, except its amount. It is not alleged that the relator was a bidder, nor that he obtained the contract in consequence of the withdrawal of the bid by Hall & Cox. There is nothing to show any connection between the contract and the withdrawal of this bid. For aught that appears, the two transactions may have been separate and distinct from each other.

But waiving this objection, the defense is clearly untenable. It is immaterial whether the agreement with Hall & Cox was valid or invalid. The contract for the erection of the jail is between the relator and the county, and if its validity can be called in question by reason of the agreement, this can only be done at the instance of the county. At most, the contract is only voidable and not void. The county may treat it as a valid contract, and insist upon its performance; and if the relator should fail to perform it, he would be responsible to the county for all the damages resulting from such failure. It will hardly be pretended that the respondent has any power to rescind the contract, or that a judgment in his favor would have that effect. The consequence of such a judgment would be to deprive the relator of any benefit from the contract, without relieving him of its burdens. So gross an injustice would not only be repugnant to common sense, but in violation of established principles of the law of contracts. So long as a contract remains in force, it is equally binding on both parties and must be so treated for all purposes. If any cause exists for rescinding it, and a rescision is desired by either party, he must restore the other to the same condition he was in before the contract was made. (*Watts* v. *White*, 13 Cal. 323; *Purdy* v. *Bullard*, 41 Cal. 444; *Bohalt* v. *Ditler*, 41 Cal. 532.

The averment in the answer as to the authority of Case is immaterial. The petition alleges that the contract was made by the Board, and this allegation is not denied. (Pet. par. 6.)

The point of the averment is that the Board authorized a contract payable in county warrants, without designating the fund for their payment, and that the contract entered into provides for warrants upon the general fund. Admitting this to be so, there was no substantial departure from the authority given. The warrants would have been payable out of the general fund, irrespective of the provision in the contract. All warrants legally drawn are charges upon the treasury, and such as are not payable out of a special fund, must be paid out of the general fund.

But in addition to this, the contract has been acted upon and confirmed by the Board. The allowance of the claim presented by the relator was such a recognition of the contract as precludes any question as to its form.

The contract shows that it was intended as the contract of the county and not of the Board. In making it, the Board acted on behalf of the county, and this is sufficient to give character to it as a county obligation. (Pet. Par. 6; *State* v. *McCauley,* 15 Cal. 456, and cases cited.)

No special tax is necessary to pay for the jail. The power to provide for its erection was given in express terms, and the cost must be paid in the same manner as other indebtedness of the county. The right of the relator to sue the respondent for damages, is no answer to the present applition. (*Fremont* v. *Crippen,* 10 Cal. 211; *People* v. *Loucks,* 28 Cal. 68; *Day* v. *Callow,* 39 Cal. 593.)

The validity of the contract is not affected by the amount of the previous liabilities of the county, nor is it material that there was no money in the treasury to pay the account at the time it was allowed. (2 Pol. C. Sec. 4070, 4148.)

Section 4070, above cited, does not contain any limitation as to the amount of the debts and liabilities which may be created against a county; and in respect to the allowance of accounts, the " debts and liabilities" referred

to, other than the salaries of officers and the liabilities fixed by law, are evidently such as have been passed upon and allowed by the Board. The object was to prevent accounts from being allowed beyond the revenue for the current year, and it could not have been intended that the mere existence of debts and liabilities exceeding the amount of such revenue should preclude the allowance of accounts. It is the further allowance which is interdicted, and the plain meaning is that the Board must stop when its allowances equal the revenue. In this view of the provision, a sufficient motive for it may be found in the fact that warrants upon the treasury bear interest if not paid when presented.

We also think the provision should be treated merely as directory. (*Argenti* v. *San Francisco*, 16 Cal. 262.)

The answer is obviously insufficient to present these questions, but we have chosen to notice them for the purpose of showing utter want of any substantial merit in the defense.

A contract to pay in warrants, is the same in effect, as a contract to pay in money. The indebtedness of a county can only be paid through the medium of warrants upon the treasury, and if the creditor chooses to accept the warrants in payment, it is certainly competent to make the contract in that form.

The expense incurred is not extraordinary, nor is it necessary to levy a tax for its payment, except as a part of the general indebtedness of the county. In providing for the erection of the jail, the Board acted under a power as full and complete as the Legislature could make it, and the expense must be paid in the same manner as other indebtedness for which no special provision is made.

On the whole case, we are unable to perceive any defense in the application. The Board was under no restriction as to the mode of exercising the power given, and it is clear that the contract in question was a proper mode in which to exercise it. (2 Pol. C. Sec. 4046, sub. 26; *Ketchum* v. *City of Buffalo*, 14 N. Y. 356).

This being so, the claim of the relator was chargeable

against the county, and it is not denied that the claim was legally examined, allowed, and ordered paid by the Board. The statute provides that "The Auditor must draw warrants on the County Treasurer in favor of all persons entitled thereto in payment of all claims and demands chargeable against the county, which have been legally examined, allowed, and ordered paid by the Board of Supervisors." (2 Pol. C., Sec. 4215.)

The Auditor has no discretion on the subject. If the claim is of the character specified in the statute, he must draw his warrant as directed. Of course, he may refuse to draw it, if the claim is not chargeable against the county, but this is not the kind of discretion which will prevent the issuing of the writ. The duty imposed is purely ministerial, and if the facts show that its performance has been improperly refused, the writ will issue. (*McCauley* v. *Brooks,* 16 Cal. 11; *Middleton* v. *Low,* 30 Cal. 596; *Livingston* v. *Taylor,* 30 How. Pr. 78.)

*C. A. Tuttle,* for Defendant.

The writ of mandate lies when there "is not a plain, speedy, and adequate remedy in the ordinary course of law." (Code of C. P. Sec. 1086.) There is such a remedy at law by action against the Auditor for neglect of official duty. It is a question of damages in money. The refusal of a clerk to issue an execution to collect money would be the same. Action will not lie against clerk to compel him to issue execution on money judgment, because there is remedy at law. (*Goodwin* v. *Glazier,* 10 Cal. 333.)

*People* v. *Loucks,* 28 Cal. 65, was an application for writ to be placed in possession of land, and not in point.

In *Fulton* v. *Hanna,* 40 Cal. 279, the Court again held that mandate would not issue to clerk to compel execution on money judgment.

*Fremont* v. *Crippen,* 10 Cal. 211, is not in point, as it relates, like *People* v. *Loucks,* to writ to be restored to land. In this case the Court say, p. 215, "It is true he might sue defendant on his bond for damages, but the possession of

the property   *   *   *   can only be obtained by the present process." This was decided July Term, 1858, and the same Judges, at the October Term following, decided *Goodwin* v. *Glazier*, 10 Cal. 333. Sheriff not compelled to make deed by writ of mandate where there is a contest about liens. (*William* v. *Smith*, 6 Cal. 91.)

Petition must show there is no doubt about petitioner's rights. (*Fogarty* v. *Sparks*, 22 Cal. 143.) Mandamus does not lie where the officer has discretionary power. (*Flagley* v. *Hubbard*, 22 Cal. 34.) Mandamus does not lie to compel a Board of Supervisors to allow an account against the county. The county can be sued. (*Crandall* v. *Amador Co.* 20 Cal. 72.)

Petition does not show there is money in the fund. (*Cramer* v. *Supervisors*, 18 Cal. 384.) The account of petitioner was not divided into items as required. (Political Code, Sec. 4072.) It is not averred that the county owns block 22. (Sec. 4046, Subdivs. 8 and 13.) San Leandro is the county seat, and if the county buildings are required to be there, no jail was needed. No legal removal is averred. (Political Code, Sec. 3953.) It does not appear that Case is a Supervisor. (Complt. par. 7.) The order did not specify the fund on which the warrant was to be drawn. (Sec. 4046, Subs. 12 and 26, and Secs. 4076, 4223 and 4144, Political Code.)

The contract does not provide that eight hours shall be a day's work under it. (Political Code, Secs. 3245, 3259.) It is a contract for the work and materials both, and violates Secs. 3233 and 3234, Political Code. The contract is void under the Act to regulate the erection of public buildings. (Stats. 1871–2, p. 925. Note to Sec. 3234, Political Code.)

" Advertisement stated that $50,000 was authorized to be expended, but does not say in county warrants. It was to be expended by Supervisors. (See note above referred to.)

" Power of Board to build jail. Power of Board in Political Code, same as under old law. (Old law, Hittell, 6976, Subdiv. 11. Political Code, Sec. 4046, Subdiv. 9.) Yet under the old law the Legislature did not think the

Board had power to levy tax for building jail or court-house. Act authorizing Yuba and Calaveras to levy tax to build jail. (Laws 1855, p. 188. Hittell, Sec. 6996.) Sacramento county authorized to build jail. (Laws 1855, p. 22.)

Alameda County authorized to build jail and levy tax. (Laws 1857, p. 205; Laws Continued in Force, Sec. 22.) Board cannot levy a tax for jail. (Political Code, Sec. 4046, Subdivs. 13–4–5–8.) Board cannot contract a debt for a jail. (Political Code, Sec. 4003, Sub. 5, Sec. 4070.) Board must advertise that there is a certain amount of money. (Note to Sec. 3234 of Political Code.) This implies that the money must be in the treasury, or must be provided for by a tax. Petition does not aver that there was any money in the treasury, or that any tax had been levied for it. (Political Code, Secs. 4004, 4005.)

Contract is payable in warrants. This shows that it is the creation of a debt. The Board has no power to make such a contract. It gives the credit of the county. (Political Code, Secs. 3233, 3234.)

The claim is not chargeable against the county, and should have been rejected, and therefore the Auditor is not required to issue warrant. (Political Code, Sec. 4074.) It is not the contract of the county, but of the Supervisors, who are the Board of Directors of the county. (Political Code, Sec. 4000, 4002, 4003; *Love* v. *Sierra Nevada Co.*, 32 Cal. 649.)

The Auditor may show in defense that the claim is not chargeable against the county. (Political Code, Sec. 4215; *Linden* v. *Case*, 46 Cal. 171.) In this case the Court say it is the duty of the Auditor to refuse to draw warrant for an illegal claim.


By the Court, McKINSTRY, J.:

Application for a writ of mandate to the Auditor of Alameda County, commanding that officer, to draw his warrant, in favor of the relator, on the Treasurer for the amount of an account allowed by the Board of Supervisors. The case was submitted on demurrer to the petition, and on the

plaintiff's motion for judgment upon the pleadings. We think the complaint is sufficiently certain in the particulars to which is addressed, the special demurrer for uncertainty.

In support of the general demurrer, respondent's counsel urges that the relator has mistaken his mode of redress; that he has " a plain, speedy and adequate remedy" by action against the Auditor for neglect of official duty.

The cases of *Goodwin* v. *Glazier* and *Fulton* v. *Hanna*, 10 Cal. 333, 40 Cal. 279, are not precisely in point, and we are not disposed to extend the doctrine of those cases. There is no strict analogy between the warrant of the Auditor and an execution on an ordinary money judgment. If the Board of Supervisors has not exceeded its powers, the relator is entitled to the warrant which, it must be presumed, will be paid on presentation, or in due course according to the date of its registration (Pol. Code, 4,076). The drawing of the warrant is an act " specially enjoined by law." To supersede the remedy by mandamus, a party must not only have a specific, adequate legal remedy, but one competent to afford relief upon the very subject matter of his application (*Fremont* v. *Crippen*, 10 Cal. 211). It is clear that an action for damages against the Auditor, for neglect of duty, would not be equally convenient, beneficial and effective as the proceeding by mandate, since it would not compel him to do the specific act which the law requires him to perform. There is no force in the objection that the complaint should show that there was money in the fund. The duty of the Auditor does not depend upon the fact that there is money in the treasury (Sec. 4,076).

Nor can the point be sustained that the account, as presented to the Board of Supervisors, did not give " all the items of the claim," as required by Section 4,072 of the Political Code. The account refers to the contract and is accompanied by the certificate of the architects, as required by the terms of the contract. The liability, if any, arose upon the certificate of the architects selected by the parties, and we regard the form of the account as a substantial compliance with the statute.

It is urged as an objection, under the general demurrer,

that the complaint does not aver that the " county owns " block 22, on which the jail was to be erected. This is not the proceeding in which to try the title to land, nor is it necessary to decide whether the county authorities have power to build on land in which the county has not the fee. The complaint shows that the relator was placed in possession by the county, and has partially erected the building on the land described.

The next objection in support of the general demurrer is that the order of the Board allowing the account, did not specify the fund on which the warrant was to be drawn. The statute only requires the Supervisors to examine, settle and allow accounts, and " to order warrants to be drawn on the county treasurer therefor," etc., while the warrants themselves "must specify the liabilities for which they are drawn and when they accrued." (Political Code, 4,046–7.) Sections 4,144 and 4,123 do not impose on the Supervisors the necessity of specifying in each order the fund on which the order is to be drawn. The Auditor is sufficiently informed on what fund to draw, when the order of the Board specifies the liability for which it is to be drawn.

It is said by respondent's counsel, that the contract annexed to and forming part of the complaint, is void, because it does not provide that eight hours shall be a day's work under it. The Political Code (Sec. 3,245), provides that eight hours' labor constitutes a legal day's work in all cases where the same is performed under the authority of any law of the State, and directs: " A stipulation to that effect shall be made part of all contracts to which the State or any municipal corporation therein shall be a party." It is not made a consequence of an omission to insert this stipulation that the contract shall be void, and the omission, therefore, does not operate a forfeiture of the rights of the parties under the contract. If a county shall contract directly with the laborer, it will not be contended that the former may refuse to pay the latter his hire, because he had worked too many hours, or had not, by express stipulation, limited the time which should constitute a day's work. The law was passed for the protection of the laborer; an officer

of the county cannot refuse to carry out a contract because of an omission which renders the contract more favorable to the county. Again, it is said that the contract is void, because it is a contract both for labor and materials. The sections of the Political Code cited, seem to apply exclusively to the buildings of the State. (Sections 3233–4.) But if they do not, the Act of April 1st, 1872, which must prevail (Political Code, 4478–9), authorizes a Board of Supervisors to erect a building by contract.

Notwithstanding subdivision 9 of section 4046 of the Political Code, expressly confers the power, it is contended that the Board of Supervisors cannot build a jail, because it has no power to levy a tax for the purpose. We attach little consequence to the circumstance that several Acts of the Legislature have been passed, authorizing specially a tax for building court-houses and jails. We are discussing a question of mere power, not whether the power may be discreetly exercised, and such special laws may have been passed to relieve the Supervisors of the responsibility of levying a larger tax than that to which the people of a county had been accustomed.

In addition to the express power to erect county buildings the Board has authority "to levy such tax annually on the taxable property of the county as may be necessary to defray the current expenses thereof, not exceeding $1 for every $100 of value for any one year, and to levy such taxes as are required to be levied by special or local statutes." In our view it is not necessary to discuss the question whether the power to build a jail existing, the power to levy a special tax is "necessary to the full discharge of the duties of the chief executive authority of the county government." (Pol. Code, 4046, sub. 26.)

Is the expense of building a jail a portion of the current expenses of the year? We think the expression "current expenses of the year" is equivalent to "the expenses of the current year." The adjective can only be made to qualify the latter word, so that, in the absence of any provisions of a statute authorizing special or extraordinary taxation, the Board has power to levy a tax (not exceeding $1 on the

$100, sufficient to cover any expense they have power to incur as a part of the expenses of the year, or the expenses of the current year.   It is claimed, however, that the intention of the Legislature, that a tax should not be levied to cover the erection of public buildings is evidenced by the circumstance that the law specially authorizes the Board to levy a tax for certain other purposes.   In section 4046 Political Code, there are twenty-six subdivisions, specifying the powers conferred upon the Board of Supervisors.   A careful examination of these satisfies us that the money necessary to carry into effect all of the powers, with certain exceptions, is to be derived from the general tax for "current expenses," while in the excepted cases the Board is empowered to levy a special tax.   Thus the expense of dividing the county into districts; of elections; of providing, in certain cases, rooms for county purposes; of purchasing necessary property, real and personal; of erecting and furnishing public buildings; of adapting to the county the sanitary regulations applicable to San Francisco or Sacramento; of providing for the county printing, and furnishing the officers proper books and stationery, and of adopting a county seal, are payable out of the general current expense fund.   But, for reasons satisfactory to the law-makers, the power to fix the amount to be raised for laying out roads, etc., was retained by the Legislature, while the Supervisors were authorized to levy a hospital tax not exceeding a certain sum per capita or per centage *ad valorem,* and were also empowered to levy a special tax to be applied to the destruction of wild animals.   This construction gives effect to every portion of the section, and, in connection with other provisions of law, clothes the proper officers of a new county with full power to carry the local government into efficient operation.   It would certainly have been a strange omission had the codes, which purport to provide a complete system, failed to furnish the means by which the important power of erecting necessary county buildings can be brought into action.   We do not think the codifiers have neglected to provide for the case.

Our answer to another objection urged against the com-

plaint is, that a contract made with the Supervisors, by which it is stipulated that the other contracting party shall receive his compensation in county warrants, is, in legal effect, a contract that he shall be paid in money. In any event, he can only get warrants which, on presentation to the Treasurer, are to be paid or registered.

It is also objected that San Leandro is the county seat. If we take judicial notice that San Leandro was the county seat, we also take notice that it may have been removed to Oakland. The petition avers that it has been legally removed, and the demurrer admits the fact. Even a special demurrer to this portion of the complaint would be overruled. To set out all the acts necessary to a removal would render the pleading very voluminous, without accomplishing any useful end.

Again, it is urged that, on its face, the contract is not the contract of the Board or of the county. The complaint alleges that the Supervisors, acting for and on behalf of the county, entered into a written contract, and that "said contract was signed by Isham Case, Chairman of the said Board, under authority from said Board, and was executed in pursuance of orders and determinations of said Board, in that behalf duly given and made." (Code Civ. Proc. 456.) The same answer applies to the points that the petition does not aver that there was money in the treasury, or that any tax for a jail had been levied, or that debts and liabilities had been created when the account was allowed, which, added to the salaries of the officers, etc. equaled the aggregate revenue. The complaint alleges that the orders allowing the account, and directing the Auditor to draw his warrant for the same, "were duly given and made." This was the only averment necessary as to the jurisdiction of the Board. The demurrer should be overruled.

The last objection considered above is also taken, perhaps, by special answer. The answer alleges: "Before the contract mentioned in the complaint was entered into, the county of Alameda had already incurred liabilities for its current expenses, etc. which equaled all its revenues," etc. The statute (Pol. Code, 4070) reads: "The Board

must not for any purpose contract debts or liabilities, except in pursuance of law, or under ordinances of their own, adopted in accordance with the powers herein conferred; and whenever debts and liabilities have been created, which, added to the salaries of county officers and other estimated liabilities fixed by law for the remainder of the year, equal in the aggregate the revenue of the county for current expenses, no further allowance of any accounts must be made."

Passing the questions suggested by differences in the language employed in the statute and in the answer, we remark: The word revenue, as used in the section recited, cannot mean the actual money which shall be received in the county treasury. To give the word this interpretation would render it impossible for the Board to comply with the direction of the statute, since the amount can never be ascertained until all the assessments have been collected and paid into the treasury. In view of the context, it is no forced interpretation to say that it is the estimated revenue which the lawmakers had in contemplation. Subdivision 13, of section 4046, only requires that the Supervisors shall levy such tax as may be necessary, not exceeding one dollar on every hundred. They are not commanded or directed to make a record of their estimate of what the levy will probably produce. In performing the duty of levying the tax, all of the Supervisors should use their best judgment in estimating what sum it will be necessary and proper to collect, and may (and it is believed ordinarily do) make an allowance for delinquencies in the collection. But this is a moral obligation, addressed to the consciences of the individual members, and the statute itself does not make the estimate, made when the tax was levied, in any sense conclusive upon the Board. The opinion of the members on that subject may vary as the year progresses, and as the payments are made with greater or less promptness. It is their estimate of the revenue at the time an account is presented for allowance which must control the action of the Board in allowing or refusing to allow it. Thus the Supervisors are clothed with a discretion *quasi* judicial, which,

like all discretion, may be abused. But in the absence of charges of fraud, the Courts will not review their action, upon the ground that they were mistaken in a particular instance. Certainly the Auditor, whose duty is to draw warrants, when ordered to do so by the Supervisors (except where the latter have exceeded their powers), cannot assume to set up his judgment against theirs in respect to a matter which the law leaves to their wise and honest discretion. It is not necessary to decide that there can be no debts or liabilities against a county, in the sense of the section quoted, except such as have been allowed by the Board of Supervisors. But it is plain that the Board is the real auditing power under the statute, and not the officer who bears that name. The Board must determine what claims constitute debts and liabilities. And the Auditor, whose duties, as we have seen, are merely ministerial, cannot impose upon this Court, in an action entirely unfitted for such inquiry, the task of trying disputed questions of fact between the county and third persons, who are not parties to this proceeding.

The charge contained in the answer, that the relator paid Hall & Cox to withdraw their bid, does not constitute a defense to this writ. The respondent is not the general representative of the county, and can refuse to draw the warrant only in case the Board has exceeded its jurisdiction. If a fraud has been practiced on the county by the relator, or by the relator and another, the county, perhaps, may claim the contract to be invalid. But the respondent cannot refuse to perform a ministerial act because he suspects or believes he can prove facts, the evidence of which rests *in pais,* and must be produced in a direct action in which the question is properly involved, to enable a Court to declare the contract void or voidable.

The remaining averments in the answer simply raise issues of law, which have already been sufficiently considered.

Let the writ issue.