[L. A. No. 460.   Department Two.—November 9, 1899.]

|126  621|<br>|f 130 127|

## JOHN W. WHITE, Appellant, v. B. A. HAYDEN, as Auditor, et cetera, Respondent.

SUPERVISORS—ROAD COMMISSIONER — CLAIM FOR SERVICES—AUDITOR.— Where a claim for services rendered as supervisor and *ex officio* road commissioner is just and legal, and duly allowed and certified and ordered paid by the board of supervisors, it is the duty of the auditor to issue his warrant therefor, and it is not necessary that the board should designate the particular fund out of which the claim is to be paid.

ID.—DUTY OF AUDITOR—WARRANT—DESIGNATION OF FUND.—Assuming that it is the duty of the auditor to designate in his warrant the particular fund against which it is drawn, it is his duty to draw his warrant in payment of such claim on the proper fund, notwithstanding the board of supervisors had erroneously ordered its payment from another fund.

ID.—SALARY FUND.—Under the provisions of the County Government Act of March 24, 1893, a claim of a supervisor for services rendered as such and as *ex officio* road commissioner should be paid from the salary fund.

APPEAL from a judgment of the Superior Court of Kern County.   A. R. Conklin, Judge.

The facts are stated in the opinion of the court.

Cannon & Freeman, E. J. Emmons, and J. W. Ahern, for Appellant.

J. E. Patten, and R. J. Ashe, for Respondent.

THE COURT.—This cause and L. A. 461 between the same parties present the same question. Plaintiff is a member of the board of supervisors for Kern county; he rendered services as supervisor and *ex officio* road commissioner for which he was allowed by the board the sum of eighteen hundred and three dollars and fifty cents, and on July 18, 1896, payment was ordered to be made out of the salary fund of the county and a warrant was ordered drawn on the treasury for the amount. The auditor refused to draw his warrant, whereupon this action was brought to compel him to do so. A general demurrer to the complaint was sustained and judgment of dismissal entered. The appeal is from this judgment. Thereafter, to wit, on December 7, 1896, the board passed a resolution vacating so much of their order of allowance as required payment of the claim out of the salary fund, and ordered the same to be paid out of the road district fund of the fourth road district. This order was duly certified to the auditor and treasurer, and on December 8th plaintiff demanded of the auditor a warrant on the treasurer, which was refused, and thereupon the second action (L. A. No. 461) was brought to compel the auditor to draw his warrant. A general demurrer to the petition was sustained as before, and the appeal in that case is from the judgment. Respondent contends that the claim could not be paid out of the salary fund nor yet out of the road fund; and that the auditor could not designate the fund out of which it could be paid. It is hence claimed that it could not be paid at all.

Appellant contends: 1. That the compensation of the road commissioner is a "salary" within the meaning of subdivision 20, section 25, of the County Government Acts of 1891 and 1893, and payable out of the salary fund; 2. If not, it is a charge against the road district fund and payable out of that fund; and 3. If not payable out of either of these funds, it was the duty of the auditor to draw his warrant upon the proper fund. It is alleged that there was sufficient money in the treasury and also in the designated funds to pay the claim.

1. It is conceded that the claim was just and legal, and that it was duly allowed and certified. In all respects (leaving out of view for the moment the fact that the allowance designated

the fund out of which the claim should be paid) it was a claim, coming to the auditor as it did, such as devolved upon him the duty to issue his warrant therefor. (Stats. 1893, sec. 197, subd. 16, p. 484; Stats. 1891, p. 402; *Ellis v. Tulare Co.* (Cal., 1896), 44 Pac. Rep. 575; *McFarland v. McCowen,* 98 Cal. 330; *Sehorn v. Williams,* 110 Cal. 621; *Lamberson v. Jefferds,* 116 Cal. 492.)

2. It was held in *Babcock v. Goodrich,* 47 Cal. 509, where the order of the board did not specify the fund on which the warrant was drawn, that the statute (Pol. Code, sec. 4046) "did not impose on the supervisors the necessity of specifying in each order the fund on which the order is drawn. The auditor is sufficiently informed on what fund to draw when the order of the board specifies the liability for which it is drawn." The code at present is substantially the same as when that case was decided, and there is now no requirement that the board should designate the particular fund out of which a claim is to be paid.

It is not entirely clear that the law makes it the duty of the auditor to designate the fund out of which all warrants drawn by him are to be paid, or that the treasurer would be bound by the auditor's designation of the fund, although section 121 of the County Government Act and section 4223 of the Political Code would seem to imply that he should make the designation, and it is proper that he should do so. However this may be, if it be the auditor's duty to designate the fund, and as no such duty is imposed upon the board, we do not see that the auditor would be bound by the act of the board, but that it would rather be his duty to draw the warrant on the proper fund whether the board had designated the fund or not. The board has performed its legal function when it has allowed and certified the claim, and if it has made a mistake in indicating the fund, or has gone beyond its powers to designate the fund, the duty of the auditor remains to draw his warrant as the law in the particular case would authorize.

3. It seems to us that the claim should be paid from the salary fund. Supervisors have been *ex officio* road commissioners since the codes were adopted, if not before, but, as the section stood up to a recent date, they were to receive no compensation for services as commissioners. (Pol. Code, sec. 2641.) The supervisors were empowered to appoint road overseers for

each road district, and, if none were appointed, the road commissioners, within their respective districts, were to perform the duties of road overseers. (Pol. Code, secs. 2642, 2645.) The road overseer, when appointed, was to be paid from money in the treasury belonging to his road district, but when the road commissioner performed the duties he received no pay except his pay as a supervisor. (Pol. Code, secs. 2641, 2645.) The act of March 9, 1887 (Stats. 1887, p. 77), provided for the election of the road overseer, who was to perform his duties under the direction of the road commissioner. (Pol. Code, sec. 2642.) That act made no provision for the pay of the road overseer, nor did it prescribe his duties, but this was done by the act of March 19, 1889 (Stats. 1889, p. 339); and it was there provided that he should be paid from his road district fund. (Pol. Code, sec. 2645.) By the act of March 31, 1891 (Stats. 1891, p. 474), the office of road overseer was abolished from and after the Monday following the first Monday in 1893. By an amendment to section 2645 of the Political Code, the act devolved certain duties upon the road commissioner, "under the direction and pursuant to the orders of the board of supervisors," and declared what that compensation should be, as follows: "5. When not otherwise provided by law, he shall receive for his services as such road commissioner twenty cents per mile one way, for all distances traveled by him in the performance of his duties; provided, that he shall not in any one year receive more than three hundred dollars." But the act did not provide from what fund this payment was to be made. This section was amended by act of March 9, 1893 (Stats. 1893, p. 113), omitting all its provisions after paragraph 3; and section 2641 of the Political Code was amended as to the road commissioner by allowing him twenty cents per mile one way when traveling in the performance of his duties as road commissioner, not to exceed three hundred dollars in any one year. But so far as the compensation of the road commissioner is in this act provided for, the provision is superseded by the County Government Act of March 24, 1893 (Stats. 1893, p. 346). Section 216 provides: "The salaries and fees provided in this act shall be in full compensation for all services of every kind and description rendered by the officers therein named, either as officers or ex officio

officers, their deputies and assistants, unless in this act otherwise provided." Section 197 provides: "In counties of the thirty-fifth class [to which Kern county belongs] the county officers shall receive as compensation for the services required of them by law the following salaries, to wit: . . . . 16. Supervisors, six dollars per day for each day while in service of the county, and thirty cents per mile for traveling from residence to county seat." Other sections of the act fix different compensation in different counties for services rendered as road commissioner, and in still others making similar provision to that for Kern county.

Section 25, subdivision 20, of the act gives the board the power: "To establish a salary fund, and also such other county funds as they may deem necessary for the proper transaction of the business of the county, and to transfer moneys from one fund to another, as the public interest may require." Section 220 (Stats. 1893, p. 509) provides: "For the purpose of paying the salaries provided for in this act, all fees directed to be paid into the county treasury shall be set apart therein as a separate fund, to be known as the salary fund, to be applied to the payment of said salaries," and provides for a transfer of funds to this fund "as may be necessary to pay said salaries as they become due." The only difficulty in giving construction to the above provisions, as to the fund from which the road commissioner is to be paid, arises from the following section 221: "The salaries of such officers named in this act as are entitled to salaries shall be paid monthly out of the county treasury; and it shall be the duty of the auditor, on the first Monday of each and every month, to draw his warrant upon the county treasurer in favor of each of said officers for the amount of salary due him under the provisions of this act for the preceding month"; and the treasurer is directed to pay the warrants out of the salary fund. Now subdivision 12, section 25 (Stats. 1893, p. 353), makes it the duty of the board: "To examine, settle, and allow all accounts legally chargeable against the county, except salaries of officers, and order warrants to be drawn on the county treasurer therefor"; and section 51 (Stats. 1893, p. 365) provides: "All claims against the county presented by

members of the board of supervisors for per diem or milcage, or other service rendered by them, must be itemized . . . . and before allowance must be presented to the district attorney, who must indorse thereon, in writing, his opinion as to the legality thereof," et cetera. It is urged by respondent that the word "salary," as used in the act, is used in a limited sense, and refers only to officers whose compensation is a sum fixed by law which may be paid without being allowed by the board. In section 197 the compensation is denominated a salary, but in the nature of the case the amount must be ascertained by the board, for it is variable, and the act therefore devolves upon the board the duty of ascertaining and allowing the amount before it can be paid. The compensation, however, is none the less salary because the board must ascertain its amount. We think it was the intention of the legislature, by section 220, to provide for the payment of all county officers out of the salary fund, and to include supervisors as county officers whose compensation must first be determined by the board, as well as those officers whose compensation is definitely fixed by the act itself. The supervisor in acting as road commissioner is none the less a county officer, and his duties as such commissioner are performed by virtue of his office as supervisor. The board as a body has general supervision of all the roads in the county (Pol. Code, sec. 2643); and the road commissioner, although one of the board, acts as a supervisor under the direction and supervision of the board in its collective capacity. (Pol. Code, sec. 2645.) The road commissioner is not a road district officer; he is a supervisor charged with duties relating to the road district, but his identity as supervisor is not lost or changed. We can find no authority for making his compensation a charge upon the road district fund, while we do find, what seems reasonably clear, that the law contemplates that he should be paid out of the salary fund.

Whether the duties are performed in his legislative or judicial capacity, while sitting with the board or whether acting *ex officio* as road commissioner, he is performing duties devolved upon him by law as a supervisor. As he is a county officer, and as there is a salary fund created out of which county officers

are to be paid, we see no reason why he should not be paid his entire compensation allowed by law as supervisor out of that fund. "Salary" and "wages" are synonymous. Both mean a sum of money periodically paid for services rendered (Anderson's Law Dictionary); and it is immaterial how the value of the services is ascertained. Much of this ground was traveled over in the case of *Ellis v. Tulare County, supra,* and the provisions of the County Government Act of 1891, which are similar to those above referred to in the act of 1893, were considered. The conclusion was there reached that, in a county of a class such as Kern, the supervisor while acting as road commissioner is performing services "required of him by law," and is entitled to the compensation which the statute provided a supervisor should receive in such case. The question as to the fund from which he should be paid did not there arise.

The judgment is reversed and the cause remanded.

BEATTY, C. J., concurring.—I concur in the judgment solely because it is a necessary conclusion from the point decided in *Ellis v. Tulare County,* 44 Pac. Rep. 575. That case was decided in Department, but a petition for a rehearing in Bank was denied, and the decision, therefore, became the decision of the whole court. I thought at the time, and still think, the statutory provisions relating to the compensation of supervisors when acting as road commissioners were misconstrued in that case, but when acting as a member of a Department of the court I am bound by the decision of the court in Bank.

Temple, J., concurred.