MADDOX and CRANE, JJ., concur.

(169 App. Div. 472)

DE VOE v. NEW YORK STATE RYS. (No. 184–67.)

(Supreme Court, Appellate Division, Third Department. September 15, 1915.)

MASTER AND SERVANT ☞87½, New, vol. 16 Key-No. Series—WORKMEN'S COMPENSATION ACT—STREET CAR MOTORMAN—"ENGAGED IN HAZARDOUS EMPLOYMENTS"—"EMPLOYÉ"—"INJURY"—"PERSONAL INJURY."

The Workmen's Compensation Law (Consol. Laws, c. 67; Laws 1913, c. 816, as amended by Laws 1914, cc. 41, 316), provides by section 2 that compensation shall be payable for injuries sustained or death incurred by employés "engaged in the following hazardous employments," group 1 of which includes the operation of street railways, etc.; by section 3, subd. 1, defines "hazardous employments" as a work or occupation described in section 2; by section 3, subd. 7, defines "injury" and "personal injury" as "accidental injuries arising out of and in the course of employment"; and by section 3, subd. 4, defines an "employé" as a person engaged in a hazardous employment for an employer, carrying it on upon the premises or at the plant, or in the course of his employment away from the plant. Decedent, a motorman, finished his work for the day, signed his name to the register as evidence thereof, and started to take one of the company's cars to go to have his watch tested, a fortnightly requirement of the company, which designated and paid the person making the test, when he was killed by an automobile running near the curb. Held, that decedent was not engaged in the operation of a street railway, included as a hazardous employment, and that the testing of his watch was merely a condition of the employment, so that the employer was not liable.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Employé; Injury; Personal Injury.]

Smith, P. J., and Howard, J., dissenting.

Appeal from Workmen's Compensation Commission.

Proceeding under the Workmen's Compensation Act by Minnie A. De Voe, widow of Edward De Voe, to obtain compensation for his death, opposed by the New York State Railways, employer and self-insurer. Compensation was awarded by the Commission in the sum of $5.59 weekly during widowhood, together with the sum of $100 for funeral expenses, and the employer insurer appeals. Award reversed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Kernan & Kernan, of Utica (Warnick J. Kernan, of Utica, of counsel), for appellant.

Egburt E. Woodbury, Atty. Gen. (E. C. Aiken, Deputy Atty. Gen., of counsel), for the State.

Jeremiah F. Connor, of New York City, for Compensation Commission.

WOODWARD, J.    While the evidence before the Commission that the deceased was on his way to have his watch inspected, under the provisions of the employer's rule, is meager and uncertain, we will assume the facts, for the purposes of this appeal, to be as found by the Commission.    The findings are that:

"At the time of receiving the injuries resulting in his death, Edward De Voe resided at Mohawk, Herkimer county, state of New York, and was employed as a motorman by the New York State Railways, a street railway corporation.

"(2) On September 12, 1914, at about 4:50 p. m., and after deceased had finished his work for the day, and as deceased was hurrying from the car barn at Mohawk to catch a car of the New York State Railways, which was just coming to a stop before the car barn, deceased was struck by an automobile running near the curb, receiving injuries from which he died three days later.    The purpose of the deceased in taking or attempting to take a car was to proceed to Herkimer to have his watch tested.    It was understood when employés were hired that they should have free transportation on the cars of the company.    It was a rule of the company (employer) that the men should have their watches tested once in every two weeks, under penalty of loss of one day.    The employés were not paid for the time which they consumed in the period of testing their watches, or of going to or from the place the test might be made.    The person who made the test was designated and paid by the employer.

"(3) The injury received by the deceased was an accidental injury arising out of and in the course of his employment and resulted in his death," etc.

The conclusion of law is reached that:

The "claim comes within the provisions of chapter 67 of the Consolidated Laws, being chapter 816 of the Laws of 1913, as re-enacted and amended by chapter 41 of the Laws of 1914, and amended by chapter 316 of the laws of 1914, known as the Workmen's Compensation Law."

The employer, who is its own insurance carrier, appeals from the award, and, while contending that the facts found are not supported by the evidence, in so far as they relate to the deceased's intention in running to the car, urges that the conclusion of law is erroneous. This, it seems to us, is the only question requiring consideration.    Is the claim within the provisions of the statute?    The conclusion of fact, which is a mixed question of law and fact, that "the injury received by the deceased was an accidental injury arising out of and in the course of his employment and resulted in his death," is not conclusive upon this point.    While the statute is of a remedial character, and is to have a liberal construction, no doubt, for the purposes for which it is designed, it is not to be extended by implication to accidents not clearly within the language of the act.    It is true, of course, that section 10 of the act provides that:

"Every employer subject to the provisions of this chapter shall pay or provide as required by this chapter compensation according to the schedules of this article for the disability or death of his employé resulting from an accidental personal injury sustained by the employé arising out of and in the

course of his employment, without regard to fault as a cause of such injury."

But this is not the controlling provision of the act. The Legislature has not attempted to impose upon employers the obligation of insuring their employés generally against accident. The language of section 2 of the act, which is the controlling section, declares that:

The "compensation provided for in this chapter shall be payable for injuries sustained or death incurred by employés engaged in the following hazardous employments."

It covers, not employés generally, even of the particular groups, but "employés engaged in the following hazardous employments," and among these are "Group 1," which is:

The "operation, including construction and repair, of railways operated by steam, electric or other motive power, street railways, and incline railways, but not their construction when constructed by any person other than the company which owns or operates the railway, including work of express, sleeping, parlor and dining car employés on railway trains."

The insurance is not of the employé while engaged in the service of the master in employments other than hazardous. The employé of a street railway, for instance, who is engaged in bookkeeping, or in running errands or doing other work disconnected with the physical operation of the railroad, would not be "engaged in the following hazardous employments"; nor would he be entitled to compensation, though the accident might be said to have arisen "out of and in the course of his employment." The question is, not whether he was employed by a street railroad corporation, but whether he was "engaged in the following hazardous employments." If he was not engaged in "the operation  *  *  *  of railways operated by steam, electric or other motive power, street railways," etc., he is not within the letter or the spirit of the statute, even though his employer be a street railway corporation and he is injured while in that employment. The crucial question at all times is whether he is engaged in the hazardous employments mentioned in the statute, for it was only as to these that the Legislature has required the employer to provide compensation. That we are right in this is evidenced by the definitions to be found in section 3 of the act. "Hazardous employment" is defined to be "a work or occupation described in section 2 of this act," and the group to which the deceased belonged included only the operation of the street railway. It covered his employment while "engaged" in the work of a motorman in the operation of the street railroad; but when he ceased to be engaged in the hazardous employment, and went out into the highway for the purpose of becoming a passenger in one of the employer's cars, the latter owed him no duty of insurance, any more than it owed it to any other citizen lawfully using the highway.

Assuming that the deceased was about to go to have his watch tested, and that he was still in the employ of the corporation for that purpose, the occupation was not of a hazardous nature, as defined by the statute or as understood in the common experiences of mankind. The statute was intended to protect the motorman and the con-

ductor and the men engaged in the physical operation of an essentially hazardous employment, while engaged in such employment, and when the person employed ceased to be engaged in the hazardous employment he came within the ordinary operation of law. It is conceded here that he had closed his day's work, and had signed his name to the register denoting that fact, and had reached a point in the public highway, where he was run down, not by any street railroad car, or by anything over which the employer had control, but by an automobile in the control, presumably, of some third person. He was not, therefore, in the employ of the New York State Railways within the language or intent of the statute. An employé is defined by subdivision 4 of section 3 of the act as:

"A person who is engaged in a hazardous employment in the service of an employer carrying on or conducting the same upon the premises or at the plant, or in the course of his employment away from the plant of his employer, and shall not include farm laborers or domestic servants."

It is the fact of being engaged in the hazardous employment which gives the right to compensation, and not the fact that the employer is "carrying on or conducting the same," and that the employé is injured while performing some incidental duty in connection with such employment. Injury and personal injury are defined to "mean only accidental injuries arising out of and in the course of employment" (subdivision 7, § 3), and it certainly cannot be said that being run down by an automobile in a public highway, after the day's work has been completed, is an "accidental" injury "arising out of * * * the employment." It had no relation whatever to the employment; it happened "away from the plant of the employer" and at a time when he was not engaged in any hazardous employment. It did not arise out of the employment in any proper sense. He was through with his day's work. He had left the plant of the employer and was in the public highway, and was not engaged in any occupation defined by section 2 of the act here under consideration. At most he was doing an errand for the employer which involved no hazard against which the employer was bound to insure him. He was about to take a public conveyance to carry him to a nearby village to have his watch regulated, and he was run down and injured by a passing automobile. He was not going to the car for the purpose of operating it. He was going to it in the relation of a passenger, and for this purpose he was using the public highway, and there is no provision of law calling upon an employer to insure his employé as against accidents produced by third parties in the streets.

An accident "arising out of and in the course of the employment" of the deceased would be an accident arising out of his employment as a motorman in the operation of a street railroad car, while actually engaged in such hazardous employment. The contract of insurance, under the statute, was to protect the deceased against accidents arising out of and in the course of the hazardous employment in which he was engaged, and the accident did not result from anything which occurred in reference to such employment, but from the action of a third person lawfully using the public highway in common

with the deceased. He was not an employé within the definition, because he was not at the time of the accident "engaged in a hazardous employment in the service of an employer carrying on or conducting the same upon the premises or at the plant, or in the course of his employment away from the plant." He was not engaged in any service of the employer whatever.

Assuming that he was intending to go to Herkimer to have his watch tested, he was not employed for this purpose. It was merely a condition on which he was employed at all that he should have his watch tested at intervals of two weeks, just as the employer might have it a condition that he should have his hair cut or his nails manicured at stated intervals. He had completed his day's work. What he did after that might have some bearing upon his work in the future. It might be necessary to insure his right to work on the morrow, but it was no part of the employment for that day. It was not an incident of the employment, but a condition of the employment. The master had a perfect right to say that he would not employ any one who did not have his watch tested every two weeks, and the fact that the employer paid for having the test made does not alter the case in the least. The employer might refuse to employ any one who did not have a watch, and he would have a right to insist that the man furnishing his own watch should have it properly regulated as a condition of the contract of employment, just as the employé has a right to exact in addition to his cash payment the privilege of riding upon the employer's cars; but none of these affect the question of the duty of the employer to furnish insurance against accidents happening outside of the employment. This accident no more arose out of the employment of the deceased as a motorman than it arose out of his residence in Mohawk. He would not have been injured if he had not been at the particular point where he was hit, and he might not have been at this point if he had not been employed by the New York State Railways; but these are matters for general insurance, not for occupational insurance, forced upon the employer by the state, where the statute has not provided for the same.

The evidence is that the deceased had closed his day's work, and made his report of his time in writing, on which his wages were based, and that he had passed out of the employer's barn, and had reached the middle of the street, when he was struck by a passing automobile, and if the master is liable here he must be so because of a general insurance liability. It cannot be under the terms of the Workmen's Compensation Act. He was not employed to have his watch tested. It was necessary to the contract of employment that he should have such test made. His employment was that of a motorman, and any accident arising out of such employment, while engaged therein, comes within the provisions of the statute. But when he delivered over his car, signed his record, and passed out into the street, he was no longer engaged in the hazardous employments mentioned in the statute, and he took the risks which any other citizen takes in going upon the public highways. The state has not yet required the employer to become a general insurer of the lives of his employés. It

has simply required that they be protected while engaged in the performance of certain hazardous employments.

The award should be vacated and set aside.

KELLOGG, J. (concurring in result). I do not think the intestate received his injury while performing any part of his duty as an employé of the appellant. If the prevailing opinion means that there could be no liability unless the deceased met his death while actually operating his car as a motorman, I cannot agree with it. I think that while he was performing any service for the master, connected with and growing out of his employment and a part of his duties as such employé, it is immaterial whether he was actually operating his motor at the time. Having his watch tested was not a part of his service to the master. He was simply performing a condition which it was necessary for him to perform to qualify him to remain in the employment.

I therefore concur in the result.

LYON, J., concurs. SMITH, P. J., and HOWARD, J., dissent.