[Civil No. 1660.   Filed April 16, 1919.]

[180 Pac. 159.]

## ARIZONA EASTERN RAILROAD COMPANY, a Corporation, Appellant, v. J. A. MATTHEWS, Appellee.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION LAW—"MANUAL LABOR"—"MECHANICAL LABOR."—A local bill clerk for a railroad is not engaged in "manual or mechanical labor" within Employers' Liability Act, paragraph 3156, although occasionally at other times than when injured he did manual labor in loading and unloading live-stock and freight: "mechanical labor" being skilled labor employed in making and repairing tools and instruments, and "manual labor," under such paragraph, meaning actual physical contact with the dangerous instruments.

2. STATUTES — CONSTRUCTION — LANGUAGE.—Words used in a statute must be taken in their common and ordinary sense, unless from the context it is evident some other meaning was intended.

3. MASTER AND SERVANT—WORKMEN'S COMPENSATION LAW.—The phrase "caused by an accident due to a condition or conditions of such occupation," appearing in Constitution, article 18, section 7, and in Employers' Liability Act, paragraph 3154, requires more than that the accident arise out of and in the course of the employment, and an injury must have occurred while employee was at work in his occupation and it must have been occasioned by a risk or danger inherent in the occupation.

4. MASTER AND SERVANT—WORKMEN'S COMPENSATION LAW.—Where a bill clerk at a railroad freight-house was injured by falling into a scale pit being constructed by the railroad "along the route usually traveled by himself and others having business in and about defendant's freight depot," while such bill clerk was returning from midnight lunch, the injury was not one "caused by an accident due to a condition or conditions" of his occupation, although it may have arisen out of and in the course of his employment.

5. CONSTITUTIONAL LAW — SELF-EXECUTING PROVISIONS — WORKMEN'S COMPENSATION LAW.—Constitution, article 18, section 7, requiring the legislature to enact a law to make an employer liable to employees in hazardous occupations, is not self-executing, and the principle therein contained can be appropriated and applied only in so far as the legislature provides for.

6. STATUTES — CONSTRUCTION — EFFECT TO ENTIRE ACT — CONFLICT.—Effect is to be given, if possible, to every paragraph and section of a legislative act, and, if they seem to be in conflict, they must be harmonized, if possible.

7. MASTER AND SERVANT—WORKMEN'S COMPENSATION LAW—CONSTITU-
TIONALITY.—The legislature, in passing the Employers' Liability Act,
did not violate Constitution, article 18, section 7, or act beyond au-
thority granted thereby in limiting the application of the act to the
injured employee engaged in "manual and mechanical labor."

8. CONSTITUTIONAL LAW—STATUTES—VALIDITY.—While the legislature
may not extend a constitutional provision so as to include subjects
not within its purview, it may or may not, as it chooses, pass laws
putting into effect a constitutional provision, and, if a statute is not
broad and comprehensive enough to cover all subjects that it might,
such statute should be held valid as far as it goes.

9. WITNESSES—PRIVILEGED COMMUNICATION—PHYSICIANS.—Under Civil
Code of Arizona of 1913, paragraph 1677, subdivision 6, a patient
can object to a physician testifying as to what he may have learned
in his professional capacity, unless the patient has himself testified
to the communications he made to the physician, and a patient did
not waive his right to object to a physician testifying at a second
trial, even though the physician did at some previous trial testify
as to knowledge obtained by personal examination.

[As to privileged communications in general between physician
and patient, see note in 17 Am. St. Rep. 565.]

APPEAL from a judgment of the Superior Court of the
county of Maricopa. R. C. Stanford, Judge. Reversed and
remanded, with directions.

Mr. G. P. Bullard, for Appellant.

Messrs. Hawkins & Anderson, for Appellee.

ROSS, J.—Appellee sued the appellant railroad company
for damages for personal injury. Omitting formal parts, the
complaint is as follows:

"III. That on or about April 5, 1916, defendant was by
its servants and employees engaged in installing platform
scales on a platform of defendant's freight depot located in the
city of Phoenix, Arizona; that the work was not finished on
that day, but by night of said day the work had progressed
to such an extent that about eight square feet of said flooring
of said depot platform had been removed and that said
platform floor was about five feet from the ground, and
when said flooring had been removed a pit was formed about
eight feet wide, eight feet long, and five feet deep.

"IV. Plaintiff says that defendant left said pit thus
formed as above stated during the night of April 5, 1916,

unlighted, uncovered, unfenced, and otherwise unprotected at a place, vicinity, and time where and when its employees, and particularly this plaintiff, were required by defendant to work in and about said premises, and that the night of April 5, 1916, was quite dark.

"V. That on the night of April 5, 1916, plaintiff was in the course of his employment compelled to work all night for defendant at defendant's freight depot aforesaid, at manual labor as bill clerk, and that while so engaged at such manual labor between four and five o'clock A. M. of April 6th . . . he became so fatigued and hungry that it was necessary for him to have something to eat and some coffee, . . . and, in order to secure the same, he went to a nearby restaurant and then and there procured such refreshment and immediately started to return to such manual labor as such bill clerk for defendant, along the route usually traveled by plaintiff and others having business in and about defendant's freight depot, and that while so returning to his said work, and while at all times exercising due care and acting without negligence on his part, plaintiff stepped in said pit so left by defendant without any warning light or any kind of protection therefrom, and fell to the bottom of said pit, a distance of about five feet, . . . and was injured," etc.

Appellant demurred to the complaint on the ground that it failed to state facts sufficient to constitute a cause of action; also, on the ground that the employers' liability law (Civ. Code 1913, pars. 3098–3179) is unconstitutional in that it violates the Fourteenth Amendment to the federal Constitution. It answered by general denial, pleaded contributory negligence and assumed risk, and also raised the question of the constitutionality of the liability law.

At the close of the appellee's case in chief, the appellant moved the court to require him to elect whether he would ask a recovery under the Employers' Liability Act or under the common law. Whereupon, appellee announced (without any ruling of the court) his election to recover under the Employers' Act. Appellant then made the following motion:

"We desire to make a formal motion to instruct for the defendant upon the ground that the state Employers' Liability Act applies to those engaged in the operation of a railroad, to those engaged in manual and mechanical labor, and that the uncontradicted evidence in this case shows that on

the night in question, upon which it is claimed that plaintiff was injured, he was not engaged in any mechanical or manual labor and was not engaged to any extent in the operation of a railroad.''

The motion being denied, appellant introduced its evidence, and, the case being submitted to the jury, it returned a verdict in favor of appellee for the sum of three thousand dollars. The appeal is prosecuted from the order overruling motion for a new trial and from the judgment. The assignments of error are numerous—twenty-eight in number—but it will not be necessary, from the view we take of the matter, to pass upon all of them.

The first assignment is based upon the ruling of the court in denying the motion for an instructed verdict. The evidence at the time of making the motion and at the close of the entire case was in confirmation of the allegations of the complaint that appellee was a bill clerk in the employ of appellant at its freight depot in the city of Phoenix. The appellee describes the nature and character of his work as follows:

''On or about April 5, 1916, I was employed as bill clerk for the Arizona Eastern Railroad Company, working at the local freight office situated between First Avenue and Center Street. My work was in the office, which is located in the west end of the building. My duties were billing freight, writing up the transfer book, making up tonnage reports, balancing the cash-books, making an abstract, loading and unloading livestock, and sprinkling down hogs during warm weather. . . .

''We sometimes had loading and inspection of livestock at the freight-house platform, but the bulk of it was at the union stockyards, located about 13 blocks west of the freight office, and in the yards of the Arizona Eastern, 12 blocks east of the freight office.

''I have been required to go out and inspect stock after it was loaded. I have used this platform at night in loading livestock, and in loading automobiles and all kinds of freight. . . . I never loaded any stock myself, but I had to make a livestock report and an inspection of them. They were loaded by the shipper from this platform.

''I don't do manual labor. I don't do manual labor at all when I was working for the Arizona Eastern. I was doing clerical work.

"It was my duty to go out and check in the loading of the stock.

"Between the time I went to work at half-past five on the evening of the 5th and the time when I was injured on the morning of the 6th, my duties were the regular duties of the office, billing and writing transfers and making abstracts, and that is all I now recall that I did between the hour I went to work and the hour I was injured. I was not handling any stock that night. The duties I refer to were clerical that night."

Keeping this evidence in mind, as also the allegations of the complaint as to the character of the work appellee was engaged in, we now turn to the Employers' Liability Act to see if he generally, or at the time of his injury, was embraced within its terms so as to entitle him to maintain an action thereunder for damages or compensation. If the cause of action set out in his complaint and the evidence on the trial do not bring the appellee within the terms of the Employers' Liability Act, he ought not to be permitted to recover upon his election.

The constitutional mandate contained in section 7, article 18, is that the legislature enact a law to make the employer liable for injuries to employees in hazardous occupations when the accident causing the injury is due to a condition or conditions of such hazardous occupation, and is not caused by the negligence of the employee; said law so to be enacted to apply to "all hazardous occupations in mining, smelting, manufacturing, railroad or street railway transportation, or any other industry." Chapter 6, title 14, being paragraphs 3153 to 3162, inclusive, Civil Code of 1913, is the legislative effort to comply with the mandate of the Constitution. Hereafter we will refer to it as the "Liability Act."

This Liability Act has declared and determined in paragraph 3156 certain occupations in the named industries to be hazardous, and paragraph 3155 extends the benefits of the act only to those employees engaged in manual and mechanical labor.

Among other things, it is contended by appellant that appellee was not (1) employed in an occupation declared and determined to be hazardous, nor (2) engaged in manual or mechanical labor. As to the first point made, if appellee is to receive the benefits of the act, his occupation must be one

of those enumerated in subdivision 1 of section 3156, which
reads as follows:

"(1) The operation of steam railroads, electrical railroads,
street railroads, by locomotives, engines, trains, motors, or cars
of any kind propelled by steam, electricity, cable or other
mechanical power, including the construction, use or repair
of machinery, plants, tracks, switches, bridges, roadbeds, upon,
over and by which such railway business is operated."

The arguments of both sides are directed to the first divi-
sion of the subsection, it being the contention of appellant
that appellee was not engaged in an occupation in "the
operation of a railroad." Whereas appellee contends that a
bill clerk's occupation is essential to the proper operation of a
railroad and is within the occupations declared to be hazardous
in the operation of appellant's railroad. We will not go into
this question further than to say that, as we understand the
law, those persons engaged in "the operation of a railroad"
are persons who have an actual physical connection with the
handling, organizing, loading, unloading and movement of
trains, locomotives, engines, motors and cars, extending some-
times to section-men. *Jemming* v. *Great Northern Ry. Co.,*
96 Minn. 302, 1 L. R. A. (N. S.) 696, 104 N. W. 1079; *Callahan*
v. *Ry. Co.,* 170 Mo. 473, 94 Am. St. Rep. 746, 60 L. R. A. 249,
71 S. W. 208; 26 Cyc. 1370. It includes those whose occupa-
tions subject them to hazards and dangers incident to and
inherent in the physical part of the operation of the railroad,
and not those who perform services essential to the railroad
business but not in its actual operation.

It may be that appellee's occupation falls within those
named in subsection 1 as "including the construction, *use* or
repair of machinery, *plants,* tracks, switches, bridges, road-
beds, upon, over and by which such railway business is oper-
ated." If the freight depot and platform, in which was the
opening that appellee fell into, was a *plant* "by which the
railway business" of appellant was in part operated and
the appellee was not without the line of his duty when using
the platform as a way of returning to his work, we submit,
without so deciding, that his occupation might be one of those
intended to be declared and determined as hazardous by the
statute. As this question was not presented to us in brief or
argument, and as its decision is not necessary, as we view the
case, we only suggest it, for if it be granted that, he was in the

*use* of a *plant* of appellant at the time of his injury, and that his occupation was hazardous, still he was not engaged in manual or mechanical labor.

Aside from the context, it is easy to determine that appellee, in the occupation of "billing freight, writing up the transfer-book, making up tonnage reports, balancing the cash-books, making an abstract, . . . " was not engaged in mechanical labor. The definition of "mechanical," as given by Webster is:

"1. Of or pertaining to or concerned with manual labor; engaged in manual labor; of the artisan class. 2. Of, pertaining to or concerned with machinery or mechanism; made or performed by machinery or with tools."

"Mechanical labor" is labor performed by a mechanic or "one who practices any mechanic art; one skilled or employed in shaping or uniting materials, as wood materials, etc., into any kind of structure, machine or other object requiring the use of tools or other objects, an artisan." Webster.

Taken in connection with the context, we think "mechanical labor" is such skilled labor as is necessarily employed by employers in making and repairing tools and instruments used in the operation of the business. It is manual labor, but of the skilled kind.

While the words "manual labor" might be construed to mean clerical work, we do not think any such meaning attaches to them as they are used in the context. In the first place, the hazardous occupations in mining, smelting, manufacturing, railroading and other industries named as hazardous, exclude the idea of the office man's occupation. They are those occupations engaged (1) In the operation of railroads, in the construction, use and repair of machinery, etc., by which the business of railroading is carried on; (2) the use of gunpowder, etc.; (3) erection and demolition of buildings, etc.; (4) the operation of elevators, etc.; (5) work on ladders, etc.; (6) work in connection with electricity; (7) work on telegraph and telephone lines; (8) work in or about quarries, open pits, open cuts, mines, reduction works, and smelters; (9) tunnel work; and (10) work in mills, etc., operated by steam, electricity, or other mechanical power. Paragraph 3156.

Labor in any of the named occupations must mean actual physical contact with the dangerous instruments and means

used in carrying on the business.   One of the canons of interpretation of words used in a statute is that they must be taken in their common and ordinary sense, unless, from the context, it is evident some other meaning was intended. When we speak of a person doing manual labor, the mind is instantly directed to some kind of toil in which the physical predominates the mental.   The words would never call to mind the office man engaged in keeping books or making out bills or statements or operating a typewriter.   Even if appellee did occasionally, as an incident in his occupation as bill clerk, do manual labor in the loading and unloading of livestock and freight, it is enough to say he was not injured by any accident while so engaged.   At the time of his injury, his sole occupation was that of a bill clerk.   So we conclude appellee was not, at the time of the accident in which he was injured, engaged in manual or mechanical labor, and therefore is not entitled to the benefits of the Employers' Liability Act.

The meaning of the phrase "caused by any accident due to a condition or conditions of such occupation," appearing first in the Constitution (section 7, article 18), and next in the Liability Act (paragraph 3154), as descriptive of the kind of accident intended to give rise to a right of action to an injured employee, has not as yet been construed by the court.   The expression is original in our Constitution and laws.   We have not been able to find it in any of the compensation or liability laws or in any decision of a court, or in any text-book, and it therefore necessarily follows that it has not been defined or applied.   It is evident that the accident must arise out of and also be inherent in the occupation itself; the condition or conditions that produce the accident must inhere in the occupation.   If the occupation is nonhazardous, if the condition or conditions inherent therein are innocuous, the occupation and the employee therein are outside of the purview of the Constitution and likewise of the Liability Law.   The legislature, in paragraph 3155, has defined the kind of accident intended by it to be covered by the Employers' Liability Act in the following language:

"By reason of the nature and conditions of, and the means used and provided for doing the work in, said occupations, such service is especially dangerous and hazardous to the

workmen therein, because of risks and hazards which are
inherent in such occupations and which are unavoidable by
the workmen therein.''

It will be noted that stress in this definition is placed upon
"the means used and provided for doing the work in said
occupation." In fact, the dangerous "nature and condi-
tion" of the occupation is not alone because of the work,
but because of the lethal character of the means employed,
to do the work required of the employee. The nature and
conditions of the occupation, and the means used and pro-
vided to do the work therein, are so dangerous and the risks
therefrom are so inherent as that accident therefrom is "un-
avoidable by the workmen therein." It would seem that,
before an employee may recover for injury under this act, it
must have occurred while he was at work in his occupation,
and it must have been occasioned by a risk or danger inherent
in the occupation.

Our statute (paragraph 3158) requires something more
than that the "accident arise out of and in the course of the
employment," an expression common to most of the liability
and compensation laws; our statute being:

"When in the course of work in any of the employments
or occupations enumerated in the preceding section, personal
injury or death by any accident arising out of and in the
course of such labor, service and employment, and due to a
condition or conditions of such occupation or employment."

These added words to the common expression must mean
something. The words "arising out of" have been construed
to refer to the origin or cause of the injury, and the words
"in the course of," to refer to the time, place, and circum-
stances under which it occurred. Workmen's Compensation
Acts, p. 72, Corpus Juris. Superadded to these under our
Liability Act is the requirement that the injury must have
occurred in the "work," "labor, service and employment"
and be "due to a condition or conditions of such occupation."
The act of appellee in going away from his work for refresh-
ments was, it may be granted, proper and necessary; but it
is also equally as apparent that during the time of his ab-
sence he was not rendering work, service or labor for appel-
lant, and therefore the injury he sustained while on such
errand was not due to a condition or conditions of his occu-
pation. Under our statute, the work must be hazardous, and

the injury must have been incurred because of the hazard or danger in the work itself and, because of said hazard, "unavoidable" on the part of the employee. *Calumet & Arizona Min. Co.* v. *Chambers, ante,* p. 54, 176 Pac. 839.

The danger of falling into the scale pit was not peculiar to appellee in his occupation of bill clerk. It was a danger to which persons not employees of appellant were exposed as much as those engaged in the service of appellant. Appellee shows by his complaint and by the testimony of himself and others that the scale pit into which he fell was "along the route usually traveled by himself and others having business in and about defendant's freight depot." This being so, it was not a risk or hazard peculiar to his work, but one "common to the neighborhood." *In re McNicol,* 215 Mass. 497, L. R. A. 1916A, 306, 102 N. E. 697.

If it be concluded that appellee received his injury in the course of his employment, and that it arose out of the employment, that is not enough to bring him within the statute unless at the time of the injury he was engaged in one of the hazardous occupations named by the statute. The rule being, as laid down by the courts of New York, where the occupation as here must be hazardous, that—

"Where . . . the employee's ordinary duties and accustomed scope of activities do not come exclusively or predominantly within the category of enumerated employments, and only casually and incidentally does he do work fairly falling within that category, his right to remuneration must hinge on a finding that he sustained injury while actually and momentarily doing work named in the statute. If the employer shows that the employee was not so employed when he met with injury, he is not entitled to reimbursement under the statute, even though he at times did work embraced within the statute." *Gleisner* v. *Gross & Herbener,* 170 App. Div. 41, 155 N. Y. Supp. 946, 949; *De Voe* v. *New York State Ry.,* 169 App. Div. 472, 155 N. Y. Supp. 12.

Appellee contends we ought to ignore paragraph 3155 as though it were not written in our laws, and especially would he have us ignore the provision therein that limits the benefits of the act to employees doing manual and mechanical labor; for, he says, the constitutional direction to the legislature was to enact a law granting the right of action to every employee without restriction other than that his occupation

be hazardous and in one of the industries mentioned.    Without so deciding, we may suggest that the Constitution itself in spirit and by implication, if not in terms, by providing that the benefits shall be made to extend only to those employees engaged in hazardous occupations in the businesses or industries mentioned, placed the limitation contained in the law and of which complaint is made.    For is it not a fact that the hazardous occupations in the industries of mining, smelting, manufacturing and railroad transportation are all of the kind requiring manual or mechanical labor?    But, aside from this suggestion, it is the statute law and not the Constitution that gives the right of action.    Section 7, article 18, of the Constitution, is not self-executing, and the principle therein contained can be appropriated and applied only in so far as the legislature provides for it.    *Inspiration Cons. Copper Co.* v. *Mendez,* 19 Ariz. 151, 166 Pac. 278, 1183; 12 C. J. 730, 739, 741.

The deletion of paragraph 3155, or any part thereof, as appellee asks, would be to disregard one of the cardinal rules of construction stated by Judge COOLEY, as follows:

"That effect is to be given, if possible, to the whole instrument and to every section and clause.    If different portions seem to conflict, the courts must harmonize them, if possible, and must lean in favor of a construction which will render every word operative rather than one which may make some words idle and nugatory."    Cooley's Const. Lim., 5th ed., p. 70.

But it is said by appellee that this court, in *Deyo* v. *Ariz. Grading Co.,* 18 Ariz. 149, L. R. A. 1916E, 1257, 157 Pac. 371, decided that the legislature, in limiting the benefits of the Employers' Liability Act to employees doing manual and mechanical labor acted without power.    What we said in that regard was not necessary to a decision of the case, and shows upon its face that it was not intended as a statement of the law.    It was submitted more as a query.    We said:

"Whether the legislature exceeded its authority and power in restricting the beneficiaries of the law to those engaged in manual and mechanical labor only, we do not deem it necessary to determine under the facts of this case.    That question was not presented in argument by counsel; but it appears to be within the reason of the rule laid down by this court in *Behringer* v. *Inspiration Cons. Copper Co.,* 17 Ariz.

232, 149 Pac. 1065, in which we held that the legislature did not possess the power to enlarge the mandate of the Constitution as to the Workmen's Compulsory Compensation Law.''

Anything said in that regard in the Deyo case was tentative, and, upon reflection, we conclude unsupported by reason. If we had said, instead of what we did say, that it was the duty of the legislature to observe the mandate of the Constitution and make its legislation conform thereto, our statement would have been more in place and more correct in principle. While the legislature may not extend the constitutional provision so as to include subjects not within its purview or that conflict with it (*Behringer* v. *Inspiration Cons. Copper Co.*, *supra*), it is well-settled that the law-making body may or may not, as it chooses, pass laws putting into effect a constitutional provision, and if, in its efforts to give effect to a constitutional provision, the statute is not broad and comprehensive enough to cover all subjects that it might, we know of no reason why it should not be valid as far as it goes. So it is that, if other employees than those doing manual and mechanical labor might, under the Constitution, be granted the benefits of the act, it is the duty of the legislature to so provide, and, until it does so, the beneficiaries are limited to those mentioned in the statute.

Inasmuch as the judgment will have to be reversed and the case remanded to the trial court, there is a question involving the introduction of evidence that we feel should be settled at this time. Appellant offered as witnesses two physicians who rendered professional services to appellee, and wanted to prove by them what they discovered or learned of his condition, insisting that appellee had raised the ban of secrecy because in a previous trial he had examined one of the witnesses in regard to the same subject matter and had permitted the other to testify without objection. This offered testimony, upon objection that it was confidential, was rejected. This ruling is assigned as error. Our statute (subdivision 6, par. 1677, Civil Code) in regard to the privileged character of information obtained in his professional capacity by a physician or surgeon, from or of his patient, is peculiar, and, for that reason, the decisions of courts under statutes whose language is not the same, but widely different, would not greatly aid us in a construction of ours.

In *Arizona & New Mexico Ry. Co.* v. *Clark,* 235 U. S. 669, L. R. A. 1915C, 834, 59 L. Ed. 415, 35 Sup. Ct. Rep. 210, it is said:

"The express object [of subdivision 6, *supra*] is to exclude the physician's testimony, at the patient's option, respecting knowledge gained at the bedside, in view of the very delicate and confidential nature of the relation between the parties."

And "it contemplates that the patient may testify with reference to what was communicated by him to the physician, and in that event only it permits the physician to testify without the patient's consent."

It is further said:

"The act gives him [patient] the option of excluding the physician's evidence entirely by himself refraining from testifying voluntarily as to that respecting which alone their knowledge is equal, namely, what the patient told the physician with reference to the ailment."

If the record shows that appellee, in the former trial or in the present one, testified voluntarily as to what he "told the physician with reference to his ailment," it has not been pointed out to us.    It seems, under the statute and the construction given it in the Clark case, the patient can object to the physician testifying as to what he may have learned in his professional capacity unless the patient has himself *testified to the communications he made to the physician.*    It not appearing that appellee testified to any communication made by him to the physicians, he did not waive his right to object to their testifying at the second trial, even though they did at some previous trial testify as to knowledge obtained by personal examination.

In *Dahlquist* v. *Denver & R. G. R. Co.* (Utah), 174 Pac. 833, reading at page 845, the supreme court of Utah, speaking of the Clark case, said:

"Just how the appellant in that case, under the plain words of the statute and the testimony of the plaintiff, could assume that the plaintiff, who had not testified to any communication made to his physician, had waived his privilege, is beyond our comprehension.    The statute mentions one instance in which the patient's consent may be implied, namely, where he voluntarily testifies with reference to communications to his physician.    By construction all others are excluded.    *Expressio unius est exclusio alterius.*"

Even if we questioned the correctness of the construction placed upon our statute, we would be inclined to defer our judgment to that of the highest federal court for the sake of uniformity in the administration of the law in this state.

"We think the sounder view is that the mere fact that testimony has been given at a former trial does not necessarily constitute a waiver which is irrevocable at a subsequent trial of the cause. In this view of the matter, we are influenced not only by what seems to us to be the better reason, but by the well-considered opinions of other courts. *Briesenmeister* v. *Supreme Lodge Knights of Pythias,* 81 Mich. 525, 45 N. W. 977; *Burgess* v. *Sims Drug Co.,* 114 Iowa, 275, 89 Am. St. Rep. 359, 54 L. R. A. 364, 86 N. W. 307.

In the Iowa case cited above, Mr. Justice McCLAIN, speaking for the court, said:

"As to the testimony at the former trial, it seems to us that the waiver resulting therefrom should be confined to the trial in which the waiver is made. Our statute relates to the giving of testimony, not to the publication in general of the privileged matter, and it seems to us clear that any waiver resulting from the giving or introduction of testimony on a trial should be limited to that trial."

In the same case, the court, in declining to follow the New York cases, said:

"We do not agree to the reasoning in that case, which would seem to lead to the result that, if the privileged communication is in any way made public by the patient, the privilege is waived for all time; whereas, we understand to be well settled that a communication to a third person by the patient or client will not be a waiver of the right to insist on the privilege when it is sought to have the disclosure made by the way of testimony in open court." *Maryland Casualty Co.* v. *Maloney,* 119 Ark. 434, L. R. A. 1916A, 519, 178 S. W. 387, 389.

The instructions given to the jury are the ordinary instructions given in personal injury cases arising, under the common law—as to negligence, contributory negligence, assumed risk and safe place to work—and we would feel constrained to affirm the judgment but for the fact that, commingled with those instructions, are others submitting the issues under the Employers' Liability Act. These last instructions, under the pleadings and the evidence, should not have been given.

There are other assignments of error; but, as they do not go to the merits of the case, and are not likely. to occur upon another trial, we will not notice them.

The judgment is reversed and case remanded with directions that further proceedings be had in accordance herewith.

CUNNINGHAM, C. J., and BAKER, J., concur.

On construction and effect of Workmen's Compensation Acts, generally, see comprehensive notes in L. R. A. 1916A, 23, and L. R. A. 1917D, 80.