[Civil No. 4076. Filed February 20, 1939.]

[87 Pac. (2d) 270.]

STATE OF ARIZONA, Appellant, v. O. A. ASH, Appellee.

Mr. Joe Conway, Attorney General, and Mr. Charles Bernstein, Assistant Attorney General, for Appellant.

Messrs. Windes & Clark, for Appellee.

LOCKWOOD, J.—This is an action by O. A. Ash, hereinafter called plaintiff, on behalf of himself and some forty-one others, against the State of Arizona,

hereinafter called defendant, to recover wages for services performed by him and his assignors for the defendant at the Arizona state prison. It is alleged, in substance, that the services performed by plaintiff and each, except one, of his assignors were as "a guard," while the other assignor's services were performed as "prison matron"; that they had been paid for such services an amount less than that fixed as the legal *per diem* wage for such work by the Arizona state highway commission, under the provisions of section 1350, Revised Code 1928, as amended by chapter 12 of the Session Laws of 1933, commonly referred to as the "Minimum Wage Law," and that the amount which they were seeking to recover was the difference between the sum so paid and the amount to which they were entitled under such law.

The defendant demurred to the complaint as not setting up a cause of action in favor of plaintiff either on his own or on any of the assigned claims, and the demurrer being overruled and defendant declining to plead further, judgment was rendered for plaintiff as prayed for, and the matter was brought before us on appeal.

The sole question for our consideration is whether or not plaintiff set up a cause of action in his complaint, and we think this depends upon whether plaintiff and his assignors come within the terms of the Minimum Wage Law as unskilled manual laborers. If they do, they are entitled to recover, for the demurrer admits that they performed services for the length of time set up in the complaint, and that they were paid for such services less than the *per diem* fixed by the Minimum Wage Law for unskilled manual laborers under the act, in the amount asked for.

Section 1350, as amended, reads so far as material as follows:

*"Hours Of Labor On Public Work; Wages.* Eight hours, and no more, shall constitute a lawful day's work for all persons doing manual or mechanical labor employed by or on behalf of the state, or of any of its political subdivisions, except in an extraordinary emergency, in time of war, or for the protection of property or human life; in such cases the persons working to exceed eight hours each day shall be paid on the basis of eight hours constituting a day's work. Not less than the minimum *per diem* wages fixed by the state highway commission for *manual or mechanical labor* performed for said commission or for contractors performing work under contract with said commission, shall be paid to persons doing manual or mechanical labor so employed by or on behalf of the state or of any of its political subdivisions. . . . " (Italics ours.)

It appears that the only persons covered by the act are those who are "doing manual or mechanical labor" and naturally the question is, what did the legislature mean by those terms? We have had them under consideration in the case of *Arizona Eastern R. R. Co.* v. *Matthews,* 20 Ariz. 282, 288, 180 Pac. 159, 161, 7 A. L. R. 1149. Therein we said:

" 'Mechanical labor' is labor performed by a mechanic or 'one who practices any mechanic art; one skilled or employed in shaping or uniting materials, as wood materials, etc., into any kind of structure, machine or other object requiring the use of tools or other objects, an artisan.' Webster.

"Taken in connection with the context, we think 'mechanical labor' is such skilled labor as is necessarily employed by employers in making and repairing tools and instruments used in the operation of the business. It is manual labor, but of the skilled kind.

"While the words 'manual labor' might be construed to mean clerical work, we do not think any such meaning attaches to them as they are used in the context. . . .

"When we speak of a person doing manual labor, the mind is instantly directed to some kind of toil in

which the physical predominates the mental. The words would never call to mind the office man engaged in keeping books or making out bills or statements or operating a typewriter. . . . ''

■ What are the duties of a guard at the state prison? The very name indicates the primary and principal duty. The word ''guard'' is defined by Webster as ''a man or body of men stationed to protect or control a person or position; a sentinel; 'the guard which kept the door,' '' and this definition is in perfect harmony with the ordinary understanding of the duties of a guard at a state prison. In other words, their work is to watch the inmates of the prison, and see that they do not escape. Anything else they may do is purely incidental to this primary duty. It is obvious that such work is not ''mechanical labor'' within any reasonable meaning of the term. But is it ''manual labor''? Construed literally, of course, ''manual labor'' means any work done with the hand, and it may be argued that the guard who restrains a prisoner from escaping is using his hands, either directly or through the instrumentality of weapons, to make such restraint effectual. But if this meaning is to be given to the phrase ''manual labor'' as used in the act, then almost every occupation of man falls within that term. The dentist who cares for the teeth, the surgeon who performs a major operation, the stenographer and typist who has written this opinion, are all engaged in work which is literally as manual as that of the ditch digger, and yet no one would assume for a moment that by the phrase ''manual labor'' in the Minimum Wage Act, it was intended by the legislature to include any of these occupations, or the hundred of others similar thereto.

The minimum wage scale prepared by the highway commission under the law does not include a single occupation which, by any reasonable construction,

could be considered analogous to that of an armed guard at a state institution. An examination of this scale will show the practical construction which has always been put upon the law by the commission. It covers only those occupations wherein it is the ordinary custom to compensate for services on a *per diem* basis, and not upon a monthly or annual one. It will be noted on a careful examination of the language of the act that the employees protected thereby are not only defined as mechanical or manual laborers, but the compensation paid them is expressly stated to be "wages." The term "wages" as distinct from "salaries" has, especially in recent years, acquired a specific meaning. Webster defines "salary" as follows:

"The recompense or consideration paid, or stipulated to be paid, to a person at regular intervals for services, especially to holders of official, executive, or clerical positions; fixed compensation regularly paid, as by the year, quarter, month or week; stipend—now often distinguished from wages." And wages are said to be, "Pay given for labor, usually manual or mechanical, at short stated intervals, as distinguished from salaries or fees."

The legislature, in its appropriation bills, has for many years fixed the compensation for guards at the prison on an annual, and not a *per diem,* basis. We think it is absurd to imagine it would have continued this practice after the adoption of the Minimum Wage Act if it had thought the act applied to such employees as guards or matrons at the prison, since all compensation for employees who come under the act must by its terms be fixed on a *per diem* basis.

It is, of course, true that the legislature may not repeal or modify general legislation in a general appropriation bill. *Carr* v. *Frohmiller,* 47 Ariz. 430, 56 Pac. (2d) 644; *Sellers* v. *Frohmiller,* 42 Ariz. 239, 24 Pac. (2d) 666. But when the meaning of the legis-

lature in a general law is doubtful, we think its action in the appropriation bill may be considered in determining what its true meaning was in the general law. We hold, therefore, that it was not the intent of the legislature when it adopted the Minimum Wage Law to include within its provisions such employees as prison guards or matrons, any more than it was meant to cover such occupations as clerks, typists and stenographers. Its purpose was to protect the man whose work was that of a mechanic or manual laborer in the usually accepted sense of these words, and whose tenure was, therefore, normally so limited and uncertain in duration that he was usually paid wages by the day rather than salary by the month or year, and whose total annual compensation was generally uncertain and fluctuating.

 This does not mean, however, that the Minimum Wage Law does not apply to employees whose occupation is, within the generally accepted sense of the words, truly mechanical or manual labor, merely because it may happen that for some reason or another their compensation may have been fixed on an annual or monthly basis rather than a *per diem*. The method of compensation is but one of the tests used to determine the real issue, and it cannot be used to evade the law.

 But it may be said that this case comes before us on demurrer, and since a demurrer admits all of the allegations of a complaint which are well pleaded, and since the complaint alleges that the plaintiff and his assignors were employed "to perform unskilled manual labor as a guard at the Arizona state prison," that this is an admission that the labor performed comes within the Minimum Wage Law. While it is true that the demurrer admits all of the allegations of the complaint which are well pleaded, it does not necessarily admit those allegations which are am-

biguous or contradictory in their nature. Had the allegation merely been that the plaintiff was employed "to perform unskilled manual labor" it might properly be said that this was an admission he came within the provisions of the act, but when this labor is alleged to have been "as a guard," and, as we have indicated, the services of a guard are clearly not "unskilled manual labor," we think that the particular allegation of employment "as a guard" controls and overcomes the general allegation of "unskilled manual labor," and that we should consider the particular employment shown by the complaint, rather than the general one which is contradictory thereto. 49 C. J. 119, and cases cited. Since the work performed by plaintiff did not come within the class of labor for which a minimum wage was required to be fixed, or was fixed, by law, and since the legislature, in the annual appropriation act of 1937, did fix the compensation which it is admitted was actually paid to plaintiff and his assignors, the complaint did not state a cause of action, and the court erred in overruling the demurrer thereto.

The judgment of the superior court is reversed and the cause remanded with instructions to sustain the demurrer to the plaintiff's complaint, and for such further proceedings as may be proper.

ROSS, C. J., concurs.

McALISTER, J. (Specially Concurring).—I concur in the judgment because one of the grounds upon which it is based, namely, that the work of a prison guard is not manual or mechanical labor within the meaning of the Minimum Wage Law, is sound and necessitates the conclusion reached. It is clear that the work of such employees is not mechanical labor within the purview of this law and the definitions

found in the dictionaries and the decisions of the courts of "manual labor" seem to exclude it from that term also.

The second ground assigned for reversal, however, is that the Minimum Wage Law was enacted for the benefit of those workers who are paid "wages" as distinct from those receiving "salaries," but, in my opinion, the difference between these two words has little, if any, bearing on the rights of workers who perform manual or mechanical labor for the state or any of its political subdivisions, and I will state briefly my reasons for this view. It appears to me to be wholly immaterial whether the compensation of one doing manual or mechanical labor for the state or its political subdivisions is paid on a daily or on a monthly or yearly basis. He is entitled to the benefits of that law if he is doing manual or mechanical labor, regardless of the manner in which he is paid. The fact that the law uses the word "wages" to describe the compensation these workers shall receive does not mean that they shall be deprived of its benefits merely because they are paid on a salary instead of a daily basis, provided they are performing manual or mechanical labor. The chief concern of the legislature, the thought that controlled it in the enactment of the Minimum Wage Law, was to guarantee that manual or mechanical laborers should be paid at least a minimum compensation for their labor, not to provide the manner in which it should be paid, and to accomplish this it chose the following language:

" . . . Not less than the minimum *per diem* wages fixed by the state highway commission for manual or mechanical labor performed for said commission or for contractors performing work under contract with said commission, shall be paid to persons doing manual or mechanical labor so employed by or on behalf of the state or of any of its political subdivisions. . . . "

(Section 1350, Rev. Code 1928, as amended by chap. 12, Sess. Laws 1933.)

The word "wages," which means the compensation paid for manual or mechanical labor and is here used to describe the pay of such workers, does not indicate that these wages must be paid in any certain manner in order that those who receive them may have the benefit of the law. Hence, the fact that such compensation is termed a salary and paid monthly does not place manual and mechanical laborers beyond the pale of the law, for according to the authorities wages may be paid upon a daily, monthly or even a yearly basis, the only requirement being that they equal the amount the minimum *per diem* wages fixed by the highway commission would total for the payment period. In *Commonwealth ex rel. Wolfe* v. *Butler,* 99 Pa. 535, the court uses this language:

" . . . A farmer pays his farm hands in common speech wages—whether by the day, the week, the harvest, or the year. If for any reason he has occasion to employ an overseer, his compensation, no matter how measured, is called a salary. An ironmaster pays his workmen wages, his manager receives a salary. A merchant pays wages to his servant who sweeps the floor, makes the fire and runs his errands, but he compensates his salesman or clerk by a salary. How can it make any difference in what way the compensation is ascertained?"

In *McNulty* v. *City of New York,* 238 N. Y. 29, 143 N. E. 781, is found this expression by the Court of Appeals:

"The mere fact that the city has fixed the compensation at an annual rate does not in itself preclude the plaintiff from claiming that the compensation is lower than the statute permits. . . . The compensation paid to a member for a legal day's work constitutes 'wages,' even though it be fixed at a weekly, monthly, or annual rate instead of a *per diem* rate, and though for some

purposes and in some contexts it may properly be called salary. If under the statute eight hours constitutes a legal day's work for the plaintiff, then the city must pay him wages for such a day's work at not less than the prevailing rate, and compensation, *however fixed,* which results in the payment of lower wages for a legal day's work, is not in accordance with the statute. *Wright* v. *State of New York,* 223 N. Y. 44, 119 N. E. 83.'' (Italics ours.)

In *Adcock* v. *Smith,* 97 Tenn. 373, 37 S. W. 91, 92, 56 Am. St. Rep. 810, is found this language:

'' . . . 'Wages' are defined to be the compensation paid by the day, week, month, etc., for the services of laborers, . . . ''

In *White* v. *Hayden,* 126 Cal. 621, 59 Pac. 118, 121, is found this language:

'' 'Salary' and 'wages' are synonymous. Both mean a sum of money periodically paid for services rendered (And. Law Dict.) and it is immaterial how the value of the services is ascertained.''

Inasmuch, therefore, as wages define the compensation for the services of laborers and may be paid by the day, week, month or even year, it is difficult to escape the conclusion that in passing the Minimum Wage Law the legislature intended to do otherwise than treat all those doing manual or mechanical labor for the state or its political subdivisions alike, for, as said in *State* v. *Miser,* 50 Ariz. 244, 254, 72 Pac. (2d) 408, 412,

''It cannot be that the legislature purposely passed a minimum wage law uniform in terms but intended to be discriminatory in operation.''

However, such will be the effect of the holding that manual and mechanical workers paid on a daily basis come within the law but those paid by the month do not. In fact, such an interpretation may lead to even more serious results, because it means in the final

analysis that that law will be operative and effective in so far as the state and its political subdivisions are concerned only when those whose duty it is to employ manual and mechanical laborers will it so, because it will be within their power to employ and pay such workers upon a monthly basis and in consequence fix whatever salary they see fit, regardless of that law, and I know of no way by which this could be prevented. For instance, the board of supervisors of Maricopa county could provide in its budget a salary of $50 a month, or any other sum it might think proper, for each of the twelve or fifteen janitors it employs to care for the court house and pay him that sum, yet the latter, notwithstanding his work is purely manual labor, and comes within the purview of the Minimum Wage Law, would be helpless. Clearly the legislature had nothing of this kind in mind when it enacted this law.

It was contended soon after the law first became effective that it was unfair for one who has agreed to work for a certain sum and accepts it to be permitted later to recover the difference between the sum paid and the minimum wages fixed by the highway commission for that class of work, and that he should be estopped from doing so, but it was held that the Minimum Wage Law expresses the public policy of the state and cannot be waived but becomes a part of every contract of employment of that character. *City of Glendale* v. *Coquat,* 46 Ariz. 478, 52 Pac. (2d) 1178, 102 A. L. R. 837. However, that law could have been made to provide that those manual and mechanical workers who agree to and do accept the wage in force at the time of their employment could not claim any increase in the *per diem* fixed by the highway commission for the class of work they were performing until the close of the fiscal period in which they were employed. Such a provision would have prevented suits for increased wages brought as a result of a change in the *per diem*

by the commission and entitled the state, throughout its fiscal period of two years, and the counties, cities and other political subdivisions, throughout their budgetary periods of one year, to operate without being compelled to face unexpected demands.

Since the enactment of chapter 12, Session Laws of 1933, at least six cases have been before this court in which the plaintiffs sought to recover under the Minimum Wage Law compensation in addition to that they had already received, and in two of them, *State* v. *Miser, supra,* and *Board of Regents of University of Arizona* v. *Sagers,* 51 Ariz. 93, 74 Pac. (2d) 580, the statement of facts disclosed that they were working on a monthly salary basis but, notwithstanding this fact, it was held without discussing the question, however, that the law applied to them, though the plaintiffs were unsuccessful in both cases because they had not, prior to instituting their actions, filed their claims with the proper state authority for allowance. And in *State* v. *Anklam,* 43 Ariz. 362, 31 Pac. (2d) 888, the first case to reach this court involving compensation under the Minimum Wage Law, this court sustained a conviction of the board of supervisors of Pima county for its failure to pay a janitor employed by it the minimum *per diem* wages called for by that law, and while the information did not state that the janitor was drawing a monthly salary, yet the record disclosed he was paid $47.50 for fourteen days' work instead of $56, which the fifty cents an hour fixed by the highway commission for such labor would have amounted to, and in addition everyone at all acquainted with county government knows that janitors in public buildings are paid on a salary basis. And, besides, several of the superior courts of the state have relied on these decisions in awarding additional compensation to such manual workers without making any distinction between those

drawing salaries and those working for wages. So, in view of the fact that the bench, the bar, the employers and employees of the state whose duty it is to enforce this law, have, because of the foregoing decisions as well as the terms of the law itself, treated the question as settled, it occurs to me that it should not now be raised by the court of its own motion but should be enforced as the law of the state until the legislature itself, whose function it is to do so, amends the law to meet such situations as the facts of this case present.

I concur in the judgment upon the ground that prison guards do not fall within the meaning of the Minimum Wage Law, but the language of the opinion dealing with the application of this law to those receiving "wages" and those receiving "salaries" is such that it occurred to me that it might be well to state more fully my reasons for the view that those doing manual or mechanical labor for the state or any of its political subdivisions come within its purview, even though they are paid a salary instead of wages.