**140**

359 P.2d 73

William E. GRACE, John Neely, Virginia Matetic, Mattie B. Coleman, Viola M. Lucas, and Maud C. Cammon, individually, and as Maricopa County Employees Wage Committee, Appellants,

v.

MARICOPA COUNTY BOARD OF SUPERVISORS and James G. Hart, James T. O'Neill, and James E. Lindsay, as members of and constituting the Maricopa County Board of Supervisors, and the Maricopa County Hospital, Appellees.

No. 6661.

Supreme Court of Arizona.

Feb. 8, 1961.

**142**

Burton M. Bentley, Phoenix, for appellants.

Charles C. Stidham, as Maricopa County Atty., James J. Caretto, Chief Civil Deputy, Phoenix, for appellees.

LOCKWOOD, Justice.

Plaintiffs (appellants herein) as individuals and as the Maricopa County Employees Wage Committee on behalf of themselves and 153 other employees of the Maricopa County Hospital, brought suit against the defendants (appellees herein) for varying amounts to which they claimed they were entitled under the Arizona minimum wage law. The matter was submitted to the Superior Court upon a Stipulation and Agreed Statement of Facts. The Stipulation set out three issues:

(1) Whether the employees of the Maricopa County Hospital involved in the case were manual or mechanical laborers within the meaning of the minimum wage law, and

(2) & (3) Whether payment to them of the minimum wages claimed would violate certain statutory provisions relating to payment of salaries, and expenditures under the state budget laws.

Since the trial court resolved the second and third issues and no appeal was taken therefrom, we will consider only the question of whether or not the employees involved in this case fell within the applicable provisions of the minimum wage law, A.R.S. § 23-391.

The pertinent provisions of this statute are as follows:

"B. Not less than the minimum per diem wage fixed by the state highway commission for manual or mechanical

labor performed for the commission, or for contractors performing work under contract with the commission, shall be paid to persons doing manual or mechanical labor, employed by or on behalf of the state or a political subdivision thereof. The commission shall determine and publish minimum per diem wages not later than April 15 each odd numbered year".

The employees here involved had rendered services within one year from the filing of the complaint on February 25, 1953. Hence, if applicable, the minimum wages fixed by the Arizona Highway Commission from February 25, 1952, would control. Pursuant to the agreed statement of facts, this was one dollar per hour.

▮ Plaintiffs maintain that all persons "doing manual or mechanical labor" in the execution of any contract with the state or any political subdivision thereof are included within the provisions of the act. Defendants contend that the act "was intended for that particular class of working man who is described as a laborer or mechanic doing work for the (Highway) commission or for other such persons doing the same type of work as contemplated by the classifications adopted by the Highway Commission and for other laborers or mechanics."

We are in accord with plaintiffs' contention, as previously announced in State v. Jaastad, 43 Ariz. 458, 465, 32 P.2d 799, 801:

" * * * Our Legislature, in enacting chapter 12, supra (now A.R.S. § 23–391), undoubtedly had under consideration the general public policy of a minimum wage for all mechanical and manual labor employed by the state or its political subdivisions, and not the particular kind of work to be done, or the physical result to be reached thereby. * * * "

The agreed statement of facts includes classifications of all employees involved, according to the classification plan established by Maricopa County. It also includes a job description for each classification. The trial court held that the following classifications were within the provisions of the statute: "watchman" and "housekeeping worker". It excluded: "switchboard operator", "warehouse operator (sic)" (classified as "warehouse helper"), "hospital attendant I", "hospital attendant II", "seamstress", "laundry worker I", "laundry worker II", "laundry washman" and "cemetery attendant". It held that "kitchen helper" and "cook" were within the statute until May 1, 1952, but not thereafter.

▮ The trial court in its order for judgment indicated that in addition to the determination of whether the employee was engaged in manual or mechanical labor, it would apply the test of whether such employees came within the classifications of the Highway Department, apparently upon the theory that all employees

**144**

included on the classification schedule of the Highway Department were ipso facto engaged in manual or mechanical labor. It therefore decided that "cook" and "kitchen helper", being analogous to "cook", were covered only until May 1, 1952, because the classification "cook" was on the Highway Department schedule during that period, but was eliminated thereafter. This is erroneous. The adoption or publication of a schedule of wages by the Highway Commission for particular classifications of its employees does not per se constitute the statutory minimum wage schedule although it may set the salary rates for those particular employees. It is the general minimum wage fixed by the commission for manual or mechanical labor which controls.

This court has upon numerous occasions interpreted the meaning of "manual or mechanical labor" as used in the act, in its application to specific cases. Ariziona Eastern R. R. Co. v. Matthews, 20 Ariz. 282, 180 P. 159, 7 A.L.R. 1149; City of Phoenix v. Yates, 69 Ariz. 68, 208 P.2d 1147; State v. Ash, 53 Ariz. 197, 87 P.2d 270; State v. Jaastad, supra; State v. Angle, 54 Ariz. 13, at pages 19, 20, 91 P.2d 705.

"* * * When we speak of a person doing manual labor, the mind is instantly directed to some kind of toil in which the physical predominates the mental." Arizona Eastern

R. R. Co. v. Matthews, supra [20 Ariz. 282, 180 P. 162].

"* * * laborer * * * One who does physical labor; one who works at a toilsome occupation; esp., a person who does work that requires strength rather than skill, as distinguished from artisans and from the professional classes.

"* * * mechanic, once synonymous with artisan, is now commonly restricted to a workman who is skilled in constructing, repairing, or using machinery * * *" City of Phoenix v. Yates, supra [69 Ariz. 68, 208 P.2d 1150].

"Taken in connection with the context, we think 'mechanical labor' is such skilled labor as is necessarily employed by employers in making and repairing tools and instruments used in the operation of the business. It is manual labor, but of the skilled kind." Arizona Eastern R. R. Co. v. Matthews, supra.

"* * * the classification set up in (the statute) refers to the generally accepted character of any given type of work, and is not affected by the fact that labor performed by a particular individual does not have all the usual conditions of the type * * it is the general custom, and not the particular instance, which determines

the classification." State v. Angle, supra [54 Ariz. 13, 91 P.2d 708].

C.J.S. distills the definition of "manual labor" in the more recent cases from other jurisdictions:

"The term 'manual labor', construed literally and in its ordinary and usual meaning and acceptation, means labor performed by or with the hands, implying the ability for such sustained exercise and use of the hands at labor as will enable a person thereby to earn or assist in earning a livelihood. In its common and ordinary signification the term is understood to mean physical toil, or bodily exertion of a toilsome nature, and is not usually applied to all work done by the use of the hands." See cases compiled at 51 C.J.S. p. 473.

■ With these expressions regarding the effect of and the construction to be given A.R.S. § 23–391(B) to guide us, we must determine which of the plaintiffs herein are covered by the statute. In arriving at a conclusion as to whether a given job is or is not within the scope of the act, we will consider all the duties embraced by the job, regardless of the title. Conceivably classifications established by different employing agencies may bear the same title, but the duties under similar titles may vary extensively. We must therefore consider the duties described in the job classifications for Maricopa County Hospital employees. Some of the jobs held by each of the plaintiffs partake of manual or mechanical labor, or both, to a greater or lesser extent. If the *preponderance* of the required duties falls within the meaning of the phrase "manual or mechanical labor" as we have defined it, we must include such jobs within the act. If only an isolated aspect of the job squares with our definitions, we should exclude the job from coverage.

■ We hold that "warehouse helpers", "laundry workers I and II", and "laundry washmen", are entitled to receive the protection of the minimum wage provision. All plaintiffs in these categories are required in relatively heavy manual labor for sustained periods of time. "Warehouse helpers" lift and move merchandise, remove trash, stock and arrange merchandise on shelves and perform incidental clerical work. "Laundry workers I and II" are required to do manual work in a hot, moist atmosphere for extended time periods. "Laundry worker I" sorts, shakes, folds and stacks sheets, pillow cases, spreads and other similar articles. "Laundry worker II" operates extractors, tumblers, and dryers, removes laundry from washers and places it in extractors, operates washers on a relief basis and cleans and lubricates various laundry machines. "Laundry washman" operates several large machines in volume laundry

work, loading the washers and regulating the water, soap, starch, bluing and bleach to be used, and extracting washed goods. "Laundry workers I and II" and "laundry washmen" are specifically required to possess physical strength and agility to lift and move heavy loads at frequent intervals.

We conclude that "seamstress" is not included within the meaning of the act. Some manual labor may be required "Occasionally * * * in laundry as press operator or flat work finisher", but chief requirement is in mending and sewing fabric articles. It is semi-skilled work, involving manual dexterity but not so much bodily exertion as would constitute "manual" or "mechanical" labor.

We agree with the trial court that "watchmen" and "housekeeping workers" are engaged in manual labor and are entitled to the benefits of the act. The duties required of housekeeping workers correspond with those of janitors.

We think the work of "switchboard operator" does not require that degree of physical strength or exertion to justify its being classed as "manual labor". Nor do we think that the mechanical aspects of the job are sufficiently physically creative to fall within the ambit of the phrase "mechanical labor"; the work is repetitive and more analogous to that of clerical worker or typist.

"Hospital attendants I and II" are required to do some relatively heavy physical work in the performance of their jobs. However, both jobs are described as involving "sub-professional nursing". Performance of limited nursing care predominates the more strictly physical tasks such as making beds, changing linens and moving patients.

"Cook" is responsible for preparing food. His duties require more skill than strength, and the skills utilized are not essentially mechanical in nature. "Kitchen helper" assists the cook and performs some incidental custodial duties. The work is not, for the most part, heavy physical labor requiring continuous exertion.

We hold therefore that switchboard operators, hospital attendants I and II, kitchen helpers and cooks are not engaged in "manual or mechanical labor" within the meaning of the act.

"Cemetery attendant" was excluded from the provisions of the minimum wage provision by the lower court. There is no indication that any evidence regarding the duties of cemetery attendants was submitted below, and there was none included in the stipulation and agreed statement of facts. As to this classification there must be some evidence to sustain a finding of fact.

Affirmed in part, and reversed in part, with directions to make findings of fact as to the job requirements for "cemetery attendant", and to enter judgment with regard to other classifications as indicated herein.

STRUCKMEYER, C. J., BERNSTEIN, V. C. J., and UDALL and JENNINGS, JJ., concur.